LEMUEL H. NOWLEN et al., Appellants, v. CHARLES W. NOWLEN et al., Appellees.

**Conveyances:** UNDUE INFLUENCE: EVIDENCE. In an action to set
1   aside conveyances from a husband to his second wife and her son, brought at the instance of his children by his first wife, the evidence is considered and held insufficient to establish undue influence.

Conveyances: MENTAL WEAKNESS. Mental or physical weakness
2 will not avoid a conveyance unless it is further shown to
have been the result of the improper influence of others.

Conveyances: WHEN VOID FOR MENTAL INCAPACITY: EVIDENCE.
3 To avoid a conveyance solely on the ground of mental incap-
acity, the mind of the grantor must have so deteriorated as to ,
render him incapable of understanding in a reasonable degree
the nature and effect of the instrument. Evidence held in-
sufficient to show such want of capacity as would avoid a deed.

Deeds: DELIVERY. Where a trust deed has been properly execu-
4 ted, recorded and placed with the trustee who has endorsed
his acceptance of the trust thereon, there has been a complete
delivery.

Same. Where a conveyance is duly executed and is in the posses-
5 sion of the grantee, the presumption of delivery arises and
the burden is on the party claiming otherwise to overcome it.

*Appeal from Polk District Court.*—HON. C. P. HOLMES,
Judge.

TUESDAY, FEBRUARY 2, 1904.

The opinion states the case.—*Affirmed.*

*Dale & Harvison* for appellants.

*Thos. F. Stevenson* for appellees.

WEAVER, J.—Arthur Nowlen died September 7, 1897, at the age of seventy-nine years. He was divorced from his first wife in the year 1882, and within a few months thereafter married his second wife, Elizabeth, who is one of the defendants. The plaintiffs and the defendant Charles W. Nowlen are the children of the first marriage, and the defendant Arthur E. Nowlen is the only child of the second marriage. Prior to the separation from his first wife, which occurred in the year 1879, he resided in Illinois, where he was engaged in the practice of medicine. About that time he came to Iowa alone, and none of his children of the first marriage thereafter lived near him. He occasionally visited them, and at long intervals some of them made him a brief visit, but the relations between the father and these children, while

always apparently friendly, do not appear to have been of a very cordial or affectionate character. What property he brought from Illinois is not clearly revealed by the record. It does appear, however, that in the course of years he became possessed of residence property in the city of Des Moines, and one hundred forty acres of land in Story county. On February 2, 1893, he united with his wife in conveying the Story county property to one Schumaker, to be held in trust for the benefit of his son Arthur E. Nowlen, then a minor about ten years of age. In 1896 the said Arthur Nowlen, Sr., made a deed conveying to his wife the residence property in Des Moines, and soon after made to her another deed purporting to convey the Story county property. About the same time it would seem to have been discovered by him that the conveyance in trust to Schumaker was an obstacle which would prevent his making a valid deed to his wife, and an attempt was made to eliminate the trust by having Schumaker quitclaim the property back to Nowlen. In this condition the title stood at the time of Nowlen's death. Plaintiffs seek by this action to have said conveyances by their father declared void, and set aside, on the ground that they were obtained by fraud and undue influence exercised over the grantor by his wife, Elizabeth, and on the further ground that at the date of said instruments said Arthur Nowlen was of such weak and unsound mind as to be incapable of intelligently understanding the legal nature or effect of his act. Defendants deny the plaintiff's allegations of fraud and undue influence and want of mental capacity upon part of Arthur Nowlen. Trial to the court upon the issues thus presented resulted in a decree for the defendants, and plaintiffs appeal.

I. There is little or no room for contention upon the law governing this case, and the question to be decided is almost purely one of fact. Were the conveyances by which

1. UNDUE influence; evidence.

Arthur Nowlen during his lifetime divested himself of the property in controversy obtained from him by the fraud or undue influence of his

wife? At the date of said conveyances was Arthur Nowlen so infirm or unsound of mind that the court should declare said instruments void? After a careful reading of the entire record in the light of the very exhaustive and painstaking brief on part of the appellants, we are wholly unable to find any substantial support of the charge of fraud and undue influence. The testimony is entirely too voluminous for us to attempt even its recapitulation. We can say, however, in a general way, that we have searched it in vain to find anything to indicate any request or demand or persuasion made use of by the wife to induce her husband to thus provide for their son or herself, or anything upon which to found a belief that the conveyances were not in every sense of the word his free and voluntary act. It it true that the wife appears to have been considerably younger than her husband, and as he advanced in years and the feebleness usually attendant upon old age he evidently came to rely in an increasing degree upon the care and assistence which she rendered him; but services which are demanded or called forth by an ordinary sense of duty, to say nothing of conjugal affection, in a faithful wife, should not be attributed to a fraudulent or unworthy motive in the absence of evidence clearly justifying such conclusion. Neither was the act by which he transferred this property to his wife and son of such unnatural or extraordinary character as to excite a just suspicion that it must have been procured by undue influence. For eighteen years prior to his death this man had been separated from his first wife and from the children by that marriage. It is not necessary for us to consider where the blame for that separation lies. We are chiefly interested in the fact that his family was disrupted, and we have no doubt it is to the credit of the plaintiffs that they appear to have sympathized and remained with their mother. While that disruption did not have the effect to wholly estrange the father from his children, yet it is unmistakably apparent that as the years went by the strength of the bond between them gradually lessened, while his sense

of obligation to the wife and child of his old age gradually increased. Prior to the execution of the trust deed in favor of his youngest son, he had at times suggested to his children, or some of them, a purpose on his part to provide for them in some measure by his will; but during the last six years of his life the burden of his talk indicates his purpose to make his wife and her boy the principal beneficiaries of his estate. The trust deed, as we have already stated, was made February 2, 1893—more than four years prior to his death. On December 20, 1894—nearly three years before his death—he made his will (admitted to probate pending this litigation), by which, after giving his wife one-third of his estate, and providing for a legacy of $500 to his daughter Mrs. Record, and smaller legacies to the rest of the children of his first marriage, he gave all the remainder of his property to his son Arthur Nowlen. At the time of making the will the testator had moneys and credits to the amount of several thousand dollars. Following this will were the deeds made in January and February, 1896—something more than a year and a half before his death. All these things tend strongly to show a tenacity and continuity of purpose to care for his wife and infant son by giving them in some form, or by some efficient means, the bulk of the property he had accumulated. He was under no legal obligation to provide for his older children. That the wife who was then living with him, giving him companionship and care in his old age, and the son, a minor, yet unprepared for self-support, should have appealed to his bounty in preference to the children who were of mature years, and presumably capable of taking care of themselves, is not surprising, nor does it necessarily tend to discredit his good judgment or sense of right.

The fact (if it be a fact) that the grantor was physically or mentally weak will not justify the court in declar-

2. CONVEY-  ing the deeds void, unless it is further shown
ANCES: mental
weakness.  that they were executed by the grantor under

such constraint, or machination, or urgency of persuasion as to overpower his will and induce him to do that which he would not have done if left to act according to his own will and desire. See *Marmon v. Marmon,* 47 Iowa, 122; *Reeves v. Howard,* 118 Iowa, 127, and other cases there cited.

Turning now to the inquiry as to the alleged mental capacity of Dr. Nowlen at the date of the deeds, much of what we have already said will be found pertinent. It is shown

3. CONVEY-ANCES: when void for mental incapacity: evidence.

by many witnesses that as he increased in years there was an apparent diminution of mental vigor, but we are constrained to hold that the trial court was right in refusing to find there was any such unsoundness of mind as will invalidate the conveyances. Mere mental weakness in a grantor will not invalidate a deed. To have that effect, the mental powers must be so far deteriorated or destroyed that the grantor is incapable of understanding in a reasonable degree the nature and consequences of the instrument he executes. *Elwood v. O'Brien,* 105 Iowa, 239; *Mann v. Keene Bank,* 86 Fed. Rep. 51 (29 C. C. A. 547); *Wright v. Jackson,* 59 Wis. 569 (18 N. W. Rep. 486); *Burnham v. Mitchell,* 34 Wis. 117. We think no such degree of imbecility is shown in the case before us. When the entire evidence is summed up, the most that can be said in support of the plaintiff's theory is that Dr. Nowlen in the later years of his life manifested, though not in an extraordinary degree, the signs of childishness and failing memory which frequently, if not usually, mark persons of his years. In addition to this, he had received a physical injury or two during the last ten or fifteen years of his life, and had been partially paralyzed; but we find nothing leading us to believe that he did not at all times have an intelligent comprehension of his business and property affairs. The fact urged by appellants that he did not fully understand the irrevocable character of the trust conveyance to Schumaker, and supposed he could recall it, and convey the land to another, is not necessarily evidence of mental incapacity, and is a mistake many persons of un-

doubted sanity have made. A reading of the trust instrument in the light of the conduct of the parties makes it quite clear that while, in legal effect, the trust was inaugurated as of the date of the delivery of the deed, they all regarded it as a provision to secure the title and use of the property to the son and wife after the grantor's death, leaving the grantor, by common consent, the enjoyment and control of the property during his life. If it be said that the arrangement was crude, and shows a lack of appreciation of the legal force and effect of their act, the point may be conceded; but there can be no reasonable doubt that the grantor desired and was endeavoring to so place the title of the land that it should inure to the use and benefit of his wife and son, and his conduct was not inconsistent with ordinary intelligence and business capacity.

As we have before suggested, this trust conveyance, followed by the will now admitted to probate, and still later by the deeds in controversy, all concur to show a continued, insistent, and intelligent purpose to insure the succession of his wife and son to the property. If either of these acts—the trust deed, the will, or the conveyances to the wife—are valid, then the plaintiffs have no standing in this case. The evidence of mental incapacity on part of the grantor at a time as early as the date of the trust deed is very meager; insufficient, in our judgment, to sustain a verdict to that effect were the cause triable to a jury. The same may be said with scarcely less emphasis of his condition at the date of the. will. And, while the case made by plaintiffs as to the deeds executed in the year 1896 has greater support in the testimony, it still falls short of the measure of proof required to overcome the presumption of mental soundness which arises in favor of every person under all ordinary circumstances. The right of every person to dispose of his property freely and in accordance with his or her own wishes, subject only to the guaranteed right of a surviving spouse, is too sacred and important to be overriden or defeated for light or trivial causes, or upon weak or inconclu-

sive testimony. The right is especially important and valuable to the old and infirm, who too often find their little earnings a safer reliance than the love of relatives or the gratitude of friends against neglect in their declining years. Very often, too, it is only when a person is nearing the end of life that he can best know and realize to whom of those he is about to leave he owes most for love and kindness, or who is best entitled to his bounty. Even then his judgment or prejudices may lead him astray, and he may reward the undeserving, or ignore those he might well have remembered with gratitude. But these occasional exceptions are too rare to justify the courts in declaring any rule which shall restrict his entire freedom to do as he will with his own so long as he retains mind enough to know the nature and effect of the disposition he makes of his estate, whether it be by will or by deed of conveyance.

II. It is said there is no proof of the delivery of any of the deeds. The point can hardly be pressed by counsel with much confidence in its correctness. The trust deed is 4. DEEDS: delivery. signed and executed in due form. It was duly recorded. It was placed in the hands of the trustee, who indorsed thereon his written acceptance of the trust, and promised to execute the same according to its terms. What more effective delivery could have been made is not easy to imagine. It is sought to be argued that this paper was in the hands of Schumaker merely as a deposit in the safe of the latter with other papers under the control of the grantor, but the evidence is insufficient to sustain that conclusion. The placing of the deed in the hands of the trustee and obtaining his written indorsement of acceptance is a proof of delivery than which none could well be more conclusive. Moreover, the filing of the instrument for record, if done by the grantor himself, has often been held tantamount to a direct manual delivery. *Cecil v. Beaver,* 28 Iowa, 241; also, rule and cases 9 Am. & Eng. Ency. Law (2d Ed.) 159. Indeed, where conveyance is made for the benefit of a child of tender years, even where the grantor re-

tains the deed in his own possession without recording delivery has been held sufficient. *Tallman v. Cooke,* 39 Iowa, 402; *Ward v. Small's Adm'r,* 12 Ky. 58 (13 S. W. Rep. 1070); *Vaughan v. Godman,* 103 Ind. 499 (3 N. E. Rep. 257); *Newton v. Bealer,* 41 Iowa, 334; *Griffin v. Griffin,* 125 Ill. 430 (17 N. E. Rep. 782.)

In respect to the deeds made direct to the wife the testimony is no less direct and convincing. The instruments being duly executed, and found in the possession of the grantee, there is a presumption of due delivery. *Hall v. Cardell,* 111 Iowa, 206. This being shown, the burden was upon plaintiffs to overcome the presumption by evidence negativing such delivery, and this we think they have entirely failed to do.

5. SAME.

III. Question is raised as to the burden of proof. Appellants contend that the relations between the parties were of such confidential nature that a presumption of undue influence or fraud attaches to the conveyance, and the burden is upon defendants to affirmatively show their good faith in the transaction. We are not prepared to concede the correctness of this proposition, but, if we should yield the point for the purpose of the present case, we should still be obliged to hold that the evidence does show affirmatively the mental capacity of the grantor and the absence of undue influence over him.

The decree of the district court is right, and is AFFIRMED.