MERCHANTS' NATIONAL BANK OF GREENE, Appellant, v. C. W. SOESBE, Executor, CLARA A. LEE, Widow, and H. C. HEMENWAY as temporary Executor of the Estate of J. L. LEE, Deceased.

**Chattel mortgages:** CONSIDERATION. Both a note contemporaneously
1   executed with a chattel mortgage, and one past due at that time, are a valid consideration for the mortgage.

**Execution of instruments:** MENTAL CAPACITY. The execution of an
2   instrument raises a presumption of mental capacity, and the burden is upon the one asserting incapacity.

**Same:** EVIDENCE. Mere mental or physical weakness is not sufficient
3   to avoid an instrument, where the party is not shown to have been incapable of understanding, in a reasonable degree, the nature and consequences of the instrument executed. Evidence held insufficient to show mental incapacity.

**Chattel mortgages:** SALE BY ADMINISTRATOR: WAIVER OF LIEN. A
4   chattel mortgagee does not waive his priority right, as to the proceeds of a sale of the property, by permitting the administrator of a deceased mortgagor to sell the same under an order of court.

*Appeal from Butler District Court.*— HON. C. H. KELLEY, Judge.

MONDAY, MAY 5, 1908.

ACTION in equity to have an alleged chattel mortgage

declared a lien upon the proceeds of the property covered by such chattel mortgage in the hands of the executor of the mortgagor's estate. The trial court refused to give the plaintiff priority over other creditors as to the proceeds of the mortgaged property, and plaintiff appeals.— *Reversed.*

*C. M. Greene,* for appellant.

*M. Hartness,* for appellees.

MCCLAIN, J.— Prior to January 27, 1905, J. L. Lee had been engaged at the town of Greene in the business of buying, selling, and shipping live stock and in operating a meat market. On that date he returned from a short absence in Chicago very ill with an affection of the intestines, from which he died five days later, and which a post-mortem examination showed to have been the result of stoppage due to a stricture. On his reaching home he was attended by physicians, who found him suffering great pain, and who continued in frequent attendance upon him until his death, administering from time to time opiates to alleviate the intense pain and distress from which he suffered. On January 30th he executed and delivered to C. W. Soesbe, cashier of the plaintiff bank, a note to the bank for $2,700 and a chattel mortgage on certain described live stock securing the payment to plaintiff of said note and another note to the bank therein described for $1,600. His wife joined in the execution of the chattel mortgage. At the same time he executed his will, disposing of his real property to his widow for life, the remainder to his children. It appeared from evidence which is not subject to any legal objection that the decedent regarded Soesbe as his personal friend, and that these instruments had been prepared by Soesbe after some conference or communication between them. The trial court refused to consider the testimony of Soesbe as a witness with regard to decedent's business relations with the

bank and the conference between them in relation to the execution of these instruments, and for the purpose of disposing of the case we shall assume that the court properly excluded such testimony from consideration under the provisions of Code, section 4604.

It does appear, however, from other testimony that the note for $1,600 was a valid existing obligation of decedent to the bank and past due, and that the note for

1. CHATTEL MORTGAGES: consideration. $2,700, the chattel mortgage, and the will were, in fact, signed by decedent. Something is said in argument as to whether there was any consideration for the chattel mortgage, but if it was in other respects valid it was clearly supported by a consideration, not only as to the note contemporaneously executed, but as to the other note which was then past due. *Meyer v. Evans,* 66 Iowa, 179; *Johnston v. Robuck,* 104 Iowa, 523.

The only question determined by the trial court, and the only one which we find it necessary to consider, involves the capacity of the decedent to execute the chattel mortgage,

2. EXECUTION OF INSTRUMENTS: mental capacity. the claim for defendants being that decedent was at the time of its execution laboring under such physical and mental distress, and his intellect so far obscured by the effect of the disease from which he was suffering and the medicine which had been administered to him, that he was not capable of entering into a valid contract. The execution of the instrument being shown, the capacity of the decedent to execute it is presumed, and the burden is upon the defendants to show his mental incapacity. *Paulus v. Reed,* 121 Iowa, 224; *Altig v. Altig,* 137 Iowa, 420.

This was conceded by the defendants, who assumed the burden of proof, and relied upon the testimony of Dr. Birney, one of the attending physicians, and three other

3. SAME: evidence. persons who were in attendance upon decedent during his illness. The plaintiff relied upon the testimony of Dr. Nevins, an attending physician, and

two other persons who were in attendance at the time of the execution of the mortgage. Soesbe was also examined for the plaintiff, but as objection to his competency to testify under the provisions of Code, section 4604, were made and are still insisted upon by defendants, we do not give consideration to his testimony. Relatives of the decedent who were present at the time were not called as witnesses by either party. As we view the evidence presented in the record, there is no substantial conflict among these witnesses, and the difficulty in disposing of the case arises from an uncertainty left in our minds, after reading all the evidence, as to how much capacity decedent had at the time the instrument was executed to understand the nature of his act. Prior to the date on which the instrument was signed, decedent had been suffering great physical pain and distress while not immediately under the influence of morphine and atrophine hypodermically injected, and while under the influence of these drugs had been delirious and irrational. But he had had intervals of consciousness, when he recognized and called by name those who were in attendance upon him, and rationally spoke of his sufferings. Dr. Birney did not see him from about three o'clock on Monday morning (January 30th) until on the evening of that day. One of the other witnesses for defendants did not see him from Sunday evening until Tuesday evening, and their other two witnesses had not seen him until Monday night. Dr. Nevins testifies that, when Soesbe came on the morning of that day with the instruments for execution, he was not allowed to see the decedent until the effect of the opiate had worn off and he had aroused partially from its influence. From this doctor's testimony it appears that decedent listened to what was said to him, spoke about the provisions of the will, and seemed to know what he was talking about. One of the other persons then in attendance testified to having some conversation with the decedent at that time as to taking his acknowledgment, and the other

witness who was in attendance testified that decedent, though suffering a great deal, " answered questions and asked things just the same as anybody. He was rational in that way, but there were times when he was in considerable pain." There is no question as to the fact that decedent took a pen in his hand and signed the documents in the right places. After the business was transacted another injection of morphine was given by the attending physician to relieve decedent from pain.

It is impracticable to set out the testimony of the witnesses in full, but from the entire record, and bearing in mind that the burden was on defendants to establish want of mental capacity to execute the chattel mortgage at the time it was executed, we feel impelled to reach the conclusion that such incapacity as to render the instrument invalid was not established nor indicated by the fair preponderance of the testimony. We are satisfied that when decedent was not under the influence of opiates he was rational although suffering pain, and that he knew the nature of the business he was transacting, and voluntarily signed the instruments presented to him after they had been read to him by Soesbe. There is not the slightest suggestion in the testimony of any witness or otherwise that the instruments were incorrectly read, or that any advantage was taken of decedent by reason of his physical condition. The case is unlike that of mental derangement, which is shown to have been an existing condition before the doing of an act, and which is presumed to continue until a lucid interval is established. There is no evidence here that decedent was not in the possession of his right mind during the intervals of consciousness, and it definitely appears that the attending physician prevented any communication between Soesbe and decedent until the effect of the last preceding administration of morphine had so far disappeared that consciousness had returned. Mere mental or physical weakness is not alone sufficient to avoid a conveyance or contract,

where it does not appear that the party was incapable of understanding in a reasonable degree the nature and consequences of the instrument executed. *Nowlen v. Nowlen,* 122 Iowa, 541.

There is a controversy between the parties as to whether allegations of defendants of a waiver by plaintiff of the right to insist on the lien of the mortgage remained in the pleadings at the time the case was tried; but in any event they were not considered by the trial court in reaching a decision, and we think that there is no evidence in the record supporting them. As to this controversy, the facts are briefly these: On decedent's death he was found to have in his possession about one hundred cattle and a large number of hogs all ready for market and very little feed on hand with which to keep them. On the application of the widow, C. W. Soesbe was appointed special administrator and directed by the court to make sale of the stock, which had already been appraised. The stock was sold for more than the appraised value, and the proceeds accounted for as property of the estate. Subsequently C. W. Soesbe, who seems to have been named in the will, was duly appointed executor, but in order to enable him, as cashier to prosecute a claim in behalf of plaintiff to a preference on account of the plaintiff's chattel mortgage, H. C. Hemenway was appointed temporary executor, and makes defense to this action. The contention of appellee is that, by asking that the stock covered by the chattel mortgage be sold as the property of the estate, the plaintiff waived its mortgage lien; but we see no merit in this claim. Plaintiff took no action in the matter whatever. Soesbe, plaintiff's cashier, was not acting for the plaintiff as special administrator, but for the estate, having been appointed, as already said, on the application of the widow. When he made return as special administrator, he advised the court of the existence of the chattel mortgage in plaintiff's favor, and that the sale was with plaintiff's consent

*Marginal note:* 4. CHATTEL MORTGAGES: sale by administrator: waiver of lien.

that the proceeds be applied upon the mortgage indebtedness. Plaintiff had the option of proceeding to foreclose its mortgage by taking possession of and selling the stock, or filing its claim against the estate. *Allen v. Moer,* 16 Iowa, 307; *Cocke v. Montgomery,* 75 Iowa, 259. But it has never been held by this court that the mortgagee of chattel property waives his priority as to the proceeds by allowing the property to be disposed of as that of the deceased mortgagor under an order of court specially directing that method of procedure. On the contrary, it has been held with reference to an assignment for the benefit of creditors that the mortgagee does not waive his lien by yielding possession of the goods to the assignee. *In re Windhorst,* 107 Iowa, 58. This is not a question of attempting to follow the mortgaged property into the hands of an innocent purchaser, nor of attempting to follow the proceeds of the property after the application thereof to the mortgagor's debts. It seems to have been thought desirable by all parties concerned that the stock be disposed of as soon as practicable, and that a sale by a special administrator would be more expeditious than a sale under the mortgage, and more convenient in view of the fact that the validity of the mortgage could afterwards be contested without the expense incident to the interposition of objection to the mortgagee's sale. If the plaintiff ought to be taxed with the expenses incident to a sale of the mortgaged property, that can be settled in the probate court. The only question now for decision is whether the mortgage entitles the plaintiff to priority over the other creditors. That question being determined in plaintiff's favor, and it appearing that plaintiff's lien has not been waived, the case is remanded to the lower court for such further proceedings in harmony with this opinion as may be necessary to settle the further rights of the parties.

Appellant's motion to strike appellees' argument is overruled.

The judgment of the trial court is *reversed.*