ALICE A. NIXON, Appellant, v. GEORGE KLISE, Appellee.

Conveyances: MENTAL CAPACITY: UNDUE INFLUENCE: EVIDENCE.
1  Mere mental weakness is not sufficient to invalidate a deed, on the ground of undue influence; it must also be made to appear that the grantor's will was overpowered. In the instant case the evidence is held insufficient to show that the grantor was mentally incompetent to make the deed in question.

Same: CONSIDERATION: FRAUD: EVIDENCE. Adequacy of consideration
2  for a conveyance is not material, in the absence of fraud or deception

in procuring the same. In the instant case the conveyance by an aged and infirm grantor of property of the value of $15,000, in consideration for his care and support for the remainder of his life was not void, on the theory that the inadequacy of consideration and the age and enfeebled condition of the grantor warranted the conclusion that he was imposed upon.

**Same:** CONFIDENTIAL RELATIONS: BURDEN OF PROOF: EVIDENCE. The mere fact that the grantor and grantee in a conveyance of real property were brothers does not constitute such a confidential relation as to warrant the conclusion that the transaction was fraudulent, and cast the burden of showing good faith on the grantee: Nor will a showing of but slight business or other relations be sufficient to require the grantee to disprove undue influence.

*Appeal from Van Buren District Court.*—HON. D. M. ANDERSON, Judge.

WEDNESDAY, MAY 7, 1913.

SUIT in equity by plaintiff, a daughter of John Klise, to set aside a deed executed by said John Klise to his brother George because of alleged mental incapacity and undue influence. Plaintiff's petition was dismissed, and she appeals.—*Affirmed.*

*Robert & H. B. Sloan* and *Walker & McBeth,* for appellant.

*Work & Work* and *J. C. Calhoun,* for appellee.

PRESTON, J.—Prior to October 31, 1908, John Klise was a vigorous old gentleman, 82 years of age, living on his farm with his aged wife, who was in poor health. On that date he went to the town of Bonaparte, leaving his wife at home. While he was away his home burned, and in it his wife was burned to death. After the death of his wife he was not the bright, sociable man he had been before. A part of the time after the burning of the house he lived in his buggy shed,

doing his own cooking. About November, 1909, he rebuilt the house, hauling the lumber or much of it himself with his own team. He contracted for the building, employed carpenters, superintended the work to a considerable extent, paid for the material, and paid the workmen. While building the house he stated to different ones that he was building it for plaintiff, or plaintiff's husband and family. Plaintiff's husband stayed with Mr. Klise two or three months during the winter, and did the cooking; after that plaintiff's son, a young man, stayed about two weeks. Plaintiff is the only daughter, and the only heir at law of said John Klise. On February 14, 1910, he made a will by which he gave to his daughter all his property. About January, 1910, sickness came upon the old man. He was afflicted with heart trouble, dropsy, and perhaps kidney trouble. He was told by physicians that his disease was incurable. Their opinion at that time was that he might not live more than a year, but his disease yielded to treatment, and before the execution of the deed hereinafter referred to his health improved, and he was much encouraged. Some of the doctors thought he might live for a longer period if he was properly cared for.

Witnesses to the deed and contract say that Mr. Klise told them he wanted a home on his own farm; that he had been unable to get along satisfactorily with his daughter and her husband, or, rather, that they declined to stay with him; that he had plenty of property besides that which he was deeding to his brother; that he had already helped his daughter, and wanted to do something for the brother George. One witness testifies that the old gentleman told him about the first of the year 1910 that he was not going to live there any longer like a dog. May 11, 1910, he deeded to the defendant one hundred and forty-two acres of land, on which the house was situated, and of the value of about $15,000, or $16,000. At the same time the defendant gave to his brother a written contract, which is as follows: "For and in consideration of the conveyance to me by John Kise, of Van Buren

County, Iowa, of the property (which was described), I hereby undertake and agree to furnish the said John Klise a home on the above described premises during his natural life, and to provide for his proper wants and care so long as he may live. In witness whereof, I have hereunto signed my name this 11th day of May, 1910. George Klise.'' This was witnessed by two witnesses. At this time defendant had property to the amount of about $25,000, and the value of John's estate, real and personal, was about $35,000. Some years before John had deeded to plaintiff or her husband one hundred and seventy or one hundred and eighty acres of land, on which she and her family were still living. She will get under the will, or as his heir, approximately $20,000 more. Defendant's children were all of age. After the deed and contract were executed, defendant and his wife left their home farm and moved into the house on the land deeded, and John lived with, and was cared for by, them until his death, June 22, 1910. Plaintiff was an invalid, and unable to care for her father. For several months before the death of the father, neither she nor her husband visited him, and made no inquiry as to his condition or needs.

We have given our conclusions as to the principal facts, without setting out the evidence in detail. The determination of the case depends on the evidence, and is largely a question of fact.

I. As to the mental condition of deceased, we have no doubt he was mentally competent to comprehend, and understandingly transact, the business then in hand. True, he was old and for a part of the time after the death of his wife was afflicted with disease, and was quite feeble, although he was up and around. His memory was somewhat impaired. This is the substance of plaintiff's evidence bearing on his mental condition, and from which it is claimed he was mentally incompetent. Of all the many witnesses for plaintiff not one ventures an opinion that deceased was of unsound

1. Conveyances: mental capacity: undue influence: evidence.

mind. Two of such witnesses were physicians who treated him up to a short time before his death. He transacted substantially all of his own business. He advised with plaintiff's husband to some extent in the building of the house. Many witnesses told how he transacted his business, described his appearance, conversation, and conduct, and gave it as their opinion that he was of sound mind. The witnesses who were present when the deed and contract were executed described his condition at that time, and say that in their opinion his mind was sound. We find no evidence in the record of undue influence. Mere mental weakness will not invalidate a deed. It must be further shown that grantor's will was overpowered. There are many cases in Iowa so holding; but see *Nowlen v. Nowlen*, 122 Iowa, 541.

II. But it is said that, even though deceased was not mentally incompetent, the consideration was so grossly inadequate, and because of his age and enfeebled condition, the

2. SAME: con-
sideration:
fraud: evi-
dence.

transaction was such as to indicate and justify the conclusion that he was imposed upon. Doubtless the old gentleman intended at the time the new house was built, and when he made his will, that his daughter should have all the property, but there was a material change in the situation after that, and prior to the making of the deed. The property belonged to deceased, and he had a right to dispose of it as he saw fit, provided he was competent to do so, and there was no fraud. In the absence of fraud or deception, the consideration for the conveyance is not material. The situation was this: One of the things the old gentleman wanted, and needed, was a comfortable home; the ministry of a woman's care at his own home, as he had been accustomed to all his life. He had enough property with which to do this, and besides to make ample provision for his daughter. He had hoped that his daughter might furnish such a home for him, but from inability or indifference, or both, she had not done so. There was no suggestion that she would, or even could, make him a

home there. All that winter he had been sick and almost helpless, a part of the time alone, cooking his own meals; so one day in March, 1910, he said to a neighbor he wanted to see George. The neighbor took him to George's, where he stayed for a day and returned to his own home. Just before this plaintiff's son had told deceased that he was not going to stay any longer; that deceased might stay alone unless his father (plaintiff's husband) would come and stay. Soon after this deceased and George went to Ottumwa to see a doctor, and a few days after they went again. On this second visit to Ottumwa the deed and contract were made. It is true that the deceased did not live long after the making of the deed, but it was not then known how long he would live. At that time his health was improving, and the circumstances were such that he might live several years, and possibly become a burden to some one. This uncertainty is material. Deceased was assured of a home and care as long as he did live. After the deed was executed, plaintiff and her husband filed a petition for the appointment of a guardian for her father, and in his answer to such petition deceased states, among other things: ''That he then and now regards the said conveyance as a proper and wise provision for his care and support. That he is growing old, and he has no nearer kin or relatives that he has been able to induce to live with him and furnish him such care and support. That as a part of said consideration his brother has agreed to leave his own farm and move his family on the land conveyed. That defendant desires to live there at his old home and be furnished there. That his said brother has in the past furnished him gratuitously a considerable support and care, and he is satisfied from past experience he will suffer no want at his hands. That it is his purpose now, and has always been, to leave the property not conveyed to his brother as above stated to his daughter as his heir or legatee. That defendant has earned this property himself and he has the right to enjoy and control it, and he has squandered none of it.''

III.    Lastly, it is urged by appellant that there was such a confidential relation between the brothers that the defendant had the burden of showing the good faith of the transaction.    The fact that deceased and defendant were brothers does not of itself constitute such a confidential relation as to raise a presumption that the transaction was fraudulent,

3.  Same: confidential relations: burden of proof: evidence.

and cast the burden on defendant. *Vannest v. Murphy,* 135 Iowa, 123; *Reeves v. Howard,* 118 Iowa, 121; *Curtis v. Armagast,* 158 Iowa 507; 29 Am. & Eng. Enc. of Law, 134.

In this case the evidence does not in fact show such a confidential relation between these two.    The evidence is slight as to any intimate business or other relations with each other.    There is no showing that deceased was dependent on defendant for advice, or that he had placed the management of his business in defendant's hands.    We have fully examined the record, and conclude that the decree of the district court was right.—*Affirmed.*