JAMES K. BAKER et al., Appellees, v. WILLIAM BAKER,
Appellant.

**DEEDS: Undue Influence and Mental Incapacity—Combination of—
1 Effect.** A combination of "mental incapacity" and "undue in-
fluence" may be sufficient to overturn the deed of a grantor,
when, if either element stood alone in the record, the court
could not unhesitatingly pronounce such result. The aged and
enfeebled condition of the grantor, his retirement from active
business and the dominating influence surrounding him may be a
deciding factor in forcing the conclusion that it was not his mind
that was acting but the minds of others.

PRINCIPLE APPLIED: Action by the heirs to set aside a
deed by the father and mother to a son. The title was in the
mother. The deed by the father only carried, if at all, his con-
tingent dower. He was never intellectually strong, was 83 years
old when the deed was executed, was feeble and childish and his
eyesight was very poor, was very quiet and reserved, though he
sometimes boasted of his physical prowess. He had long aban-
doned all business matters to his wife. The wife was a strong,
vigorous, assertive, dominating character—the genuine "head"
of the family. She had marked affection for the son, grantee
in the deed, and their relations were very close. The affection of
the father for this son was in much less degree. The father was
really not consulted in the execution of the deed. The mother
died first. *Held*, the deed should be set aside as to the father
and that he be held to have died seized of his dower interest.

**APPEAL AND ERROR: Trial de Novo—Influence of Judgment of
2 Trial Court.** The judgment of the trial court is influential and
persuasive, even though the trial on appeal is *de novo*.

**DEEDS: Validity—Parent to Child—Consideration Inadequate—Prej-
3, 5 udice Against Children—Effect.** (a) Prejudice against his or her
children, (b) a special fondness for one child over another
founded upon a rational conception of his or her relationship to
them, (c) the leaving other children unprovided for, or (d) in-
adequacy of consideration, are not, of themselves, sufficient to
overthrow the deed of the parent to a child.

LIMITATION OF ACTION: Deed Conveying Dower—Action to Set
4  Aside—When Action Accrues.  An action to set aside a deed
    executed July 19, 1899, conveying contingent dower, on the
    ground of mental incapacity and undue influence, was not barred
    by statute of limitation, Sec. 3447, Par. 7, Sup. Code, 1913,
    (providing a period of ten years in which to recover real prop-
    erty), when commenced December 2, 1910, the spouse seized of
    title having died June 29, 1905.

*Appeal from Audubon District Court.*—HON. THOMAS
ARTHUR, Judge.

WEDNESDAY, MARCH 17, 1915.

ACTION by the heirs of Eliza and Robert Baker to set
aside a conveyance made by them to William Baker, the de-
fendant, on the ground that the same was procured by undue
influence and that the grantors were wanting in mental ca-
pacity to make the deed.  Both parties appealed.—*Affirmed*
on both appeals.

*Joe H. Ross* and *J. B. Rockafellow,* for appellant.

*J. M. Graham* and *Willard & Willard,* for appellees.

GAYNOR, J.—The plaintiffs in this case, James K. Baker,
John T. Baker and Josephine Oliver, and the defendant, Wil-
liam Baker, are the children of Eliza Baker and Robert Baker.
The interveners, Anna Hotchkiss and Nellie Smith, are daugh-
ters of Eliza and Robert Baker.  The other interveners are
the children and heirs at law of Margaret Hoffman, a daugh-
ter.  The interveners join in the prayer of plaintiffs' petition.

The action is brought to cancel and set aside a certain
deed executed by Eliza and Robert Baker to the defendant,
William Baker, and for a decree establishing ownership in
said land in favor of the plaintiffs and interveners, as follows:
One-seventh interest in each of the children of said Eliza and
Robert Baker, and one-seventh interest in the heirs of Mar-
garet Hoffman.

On the 19th day of July, 1899, Eliza Baker and Robert

Baker conveyed to the defendant, William Baker, the Northeast Quarter of Section 18 and the West Half of the Northwest Quarter and the Southeast Quarter of the Northwest Quarter, Section 17, Township 81 North, Range 34 West of the 5th P. M., containing about 280 acres. This deed was duly recorded on the day of its execution.

The plaintiffs and the interveners claim that this deed was obtained from Eliza and Robert Baker by fraud, duress and undue influence; that, at the time of the execution of the deed, the grantors were old, feeble, childish, and infirm, and subject to the will and influence of the defendant; that the defendant, by means of misrepresentations to the effect that the other children would not take care of them in their old age, and would not properly provide for them, and that, if they obtained any of the property, would squander it, and by means of threats to the effect that he would abandon and leave them if they would not execute the contract in question, induced them to execute it; that they were old, weak, and infirm, and did not fully know the import of the instrument they executed. It was further alleged that the decedents retained possession of the real estate until their death, and the defendant did not take possession until after their death.

The defendant, William Baker, answering, admits that Eliza Baker was, at one time, the owner of the real estate described in the petition. Admits that she died on the 12th day of May, 1905, and that Robert Baker, her husband, died on the 29th day of June, 1905. Defendant denies each and every other claim of plaintiffs and interveners.

Defendant, further answering, says that he purchased the real estate from said Eliza and Robert for a good and valuable consideration, and that, on the 19th day of July, 1899, they executed to him a warranty deed for the same, and the same was duly recorded on that day; that defendant immediately entered into the possession, and has ever since held open, notorious, adverse, hostile, and exclusive possession thereof for more than ten years. Defendant further pleads

the statute of limitations, and also prays that his title to the land be quieted in him.

Plaintiffs and interveners for reply admit that the defendant has been in the possession of all the real estate, but that he did not claim, to any of these heirs, to be the owner of the land prior to March, 1906. Did not claim that the land had been deeded to him, and that prior to that time they had no knowledge or information that he claimed to own the same.

It appears that the original notice in this action was served on the defendant on the 2d day of December, 1910, and the petition filed on the 3d day of December, 1910.

Upon the issues thus joined, the cause was tried to the court, and the following finding of facts made by the court:

That, at the time the deed in controversy was made, Eliza Baker, one of the grantors, was competent to make it; that Robert Baker was not; that Eliza Baker was the owner of the land at the time; that Robert Baker had only a dower interest therein; that the deed passed all the right, title and interest of Eliza Baker in the land to the defendant; that Robert Baker, being incompetent to join with her in the deed, and, therefore, incompetent to make a deed that would release his right of dower, remained vested with a dower interest in the land; that Eliza Baker died first; that, upon her death, Robert Baker became entitled to an undivided one-third of the land, as his distributive share as the husband of Eliza Baker; that the plaintiffs and interveners have no right or interest in the two-thirds of the premises in controversy, conveyed by Eliza Baker to him; that they have an interest, as the heirs of Robert Baker, to an undivided interest in the distributive share of Robert Baker which passed to him upon the death of Eliza Baker; that each of the plaintiffs and interveners and the defendant are entitled to a one-seventh of the one-third interest, or one twenty-first part of that which passed to Robert Baker upon the death of his wife; that the children of Mrs. Hoffman are entitled to a one-seventh interest

of the one-third, or one-seventh of one twenty-first part of the real estate, and, there being seven of them, are each entitled to a one one-hundredth forty-seventh part of Robert Baker's dower interest.

The defendant appeals from so much of the decree as finds that Robert Baker was incompetent to make the deed, and so much of the decree as gives to the interveners and plaintiffs an interest in an undivided one-third.

The plaintiffs appeal from the decree in so far as it finds that Eliza Baker was competent to make the deed, and that, under the deed, two-thirds of the land passed to the defendant.

The defendant, having appealed first, will be treated as appellant, and the plaintiffs as appellees. We will treat of defendant's appeal first. It involves the questions:

1st. Does the evidence show that Robert Baker was incompetent to make the deed at the time it was made, or was undue influence exercised over him in procuring it?

2d. Is plaintiffs' claim barred by the statute of limitations?

Eliza Baker died May 12, 1905. Robert Baker died June 29, 1905. Eliza Baker, at the time of her death, was eighty-four years old. Robert Baker was eighty-eight.

The land conveyed consisted of 280 acres. The testimony shows that, at the time of the conveyance, it was worth from $40.00 to $45.00 an acre.

In considering the question of Robert's competency to make this deed, the ultimate question relates to the time of the making of the deed, to wit, July 19, 1899. We are inclined to think from the record that he was never considered intellectually strong. The mother, Eliza, seems to have been the stronger and the dominative character. She seems to have been the head of the family. He was, at the time this deed was made, about eighty-three years of age. There is nothing

1. DEEDS: undue influence and mental incapacity: combination of: effect.

to indicate that his health was not normal for a man of his years. The only physical defect to which this record points in Robert was a weakness of the eyesight. The only peculiarity in his conduct, emphasized by the testimony, is that he did not talk much; that he claimed he was a prize fighter. Whether this was said in jest or in earnest does not appear. Nor does the date when he made these assertions appear. There is some testimony to the effect that Robert sometimes talked childish. This testimony, however, in some instances, is qualified by the statement that this was when he got excited. Some of the witnesses testified that he claimed he got lost on the road, but the same witness stated that in the conversation he couldn't distinguish whether the difficulty was with his mind or his eyesight—that it was a fact that he couldn't see good.

Some of the witnesses testified that he indicated by his talk that he thought that he was a pretty good man physically; that he used to tell how he could knock fellows down. There are many old men who, never having been put to the test, imagine themselves quite as good physically as when they were much younger. At least they like to convey that impression, and are inclined to boast of their youthful prowess. It is difficult for some men to realize that their physical powers are abated. It is hard for them to see themselves as others see them. Age comes on insidiously. Physical changes come with advancing years. Each day brings its changes. Each year lessens the physical vigor. Some old men dye their hair. Some old men have a foolish vanity to appear young. This is not insanity. It is the egotism of old age.

The fact, if it be a fact, that he was not given much to conversation in and about the home may be traceable, as it often is traceable, to the superior qualifications of his better half in that sphere of human activity. The testimony tends to show that Mrs. Baker was a woman of strong and vigorous mind, quite given to having things her own way, quite a potential factor in the social and business life of the family, and quite inclined to say what she thought, and that, without

often a thoughtful consideration for the feelings of the person to whom she addressed herself. As one of her own daughters testified, she was rather a strong minded woman. As a matter of fact, she was always at the head of the family. She testified: "As between my mother and father, she was always the stronger character." As characteristic of her manner of speech, note the following instance testified to by her daughter: "I heard a conversation between my mother and the Magill woman about a woolen shawl. The Magill woman came in the room and said, 'Grandma, do you know me?' She said, 'Yes, I know you. Anybody that sees that old mug of yours will know it again,' and she said, 'Didn't you tell me you would give me your shawl?' She said, 'Yes, certainly, I gave the shawl to you, and you said you wouldn't wait.' 'And if you die, you will give it to me?' and she said, 'That is the reason I gave it to you. I am not dead yet.'" The date of this conversation does not appear, but we infer it was at one time when she was suffering from her ailment. It appears that she was suffering from varicose veins, which produced very painful ulcers.

It is apparent from this record that Robert Baker, for many years before he died, had not attempted to transact any business on his own account. The impression that this record makes on the mind, from a careful reading of it, is that he depended almost entirely upon his wife in the transaction of business which related to the home and the family. Whether this was a voluntary and conscious surrender of his right as the head of the family, or whether it was due to a recognition on his part of his wife's greater capability in such matters, or whether it was due to a consciousness of his own weakness, or whether it was due to want of capacity in respect to these matters, or whether it was due to the domi-nating influence of his wife over him and an assumption of superiority on her part, does not clearly appear; but we are inclined to the opinion that each of the matters suggested

had a potential influence in driving him from the fields of business activity.

The record discloses that the defendant William was rather delicate in health; that he had remained at home during all his life with his father and his mother; that the mother had a great affection for William; that the same tenderness of feeling did not exist between the father and William. At least, we should judge so from certain transactions between them referred to in the evidence. The relationship between the mother and William seems to have been very close. He was the firstborn. We are inclined to think, from this record, that the father was not consulted in reference to the transaction in question, and the transaction did not express his personal wish in the matter. He was old, feeble, never strong mentally, and gradually growing weaker as the years crept on. We are inclined to think from this record that, in so far as Robert was concerned, touching this deed, he did not act of his own free will. His joining in the deed was simply a consummation of the purpose of William and his mother to secure to William this land. We cannot trace his act wholly to incompetency, nor wholly to undue influence exercised over him; but we do find that each had a marked influence in securing his signature to this deed. Naturally weak, enfeebled by old age, dominated by the wife and son, incapable of resisting effectually, if he ever attempted resistance, he yielded, and so yielding, surrendered his interest in the property.

The witnesses in this case were before the trial court. He saw the witnesses, and from their testimony so determined this question. Some force must be given to this finding, although the case is triable *de novo* here. We

2. APPEAL AND ERROR: trial *de novo:* influence of judgment of trial court.

cannot find from this record that Robert Baker was wholly incapable of making the deed at this time. We cannot find affirmatively, as an independent proposition, that the influence used over him to secure the deed would, under other conditions, in law

be considered undue influence; yet we do find that these two, combining in the old man and operating upon his mind, produced the results of which the plaintiffs and interveners complain.

A determination of this case involves no new or unsettled propositions of law. What constitutes mental incapacity, such as will void a deed or will, has been defined by this court many times. What constitutes undue influence and makes ineffectual a contract or a will has been frequently explained and applied. Each case must be determined largely upon its own facts, and when and how the rules heretofore adopted shall be applied depends upon the facts disclosed. As has been frequently held by this court, the right of a parent, either by will or by deed, to make such disposition of his property as he may see fit cannot be questioned by his heirs without an affirmative showing that he was incapable of making the conveyance, or that the act was not his because of undue influence exercised upon him. The fact that he is influenced by prejudice against his children, or a special fondness for one child over another, founded upon a rational conception of his relationship to them, is not sufficient to justify the court in undoing what he did. See *Nowlen v. Nowlen,* 122 Iowa 541; *Kennedy v. McCann,* 61 Atl. (Md.) 625; *Justice v. Justice,* 18 Atl. (N. J.) 674.

3, 5. DEEDS: validity: parent to child: consideration inadequate: prejudice against children: effect.

Yet, where it is shown that the party making the deed was very old and enfeebled by age, that he had retired from all participation in the activities of life, that he was closely associated with and under the control and domination of others, and the conveyance was made to gratify their wish, rather than his own, and where special confidence appears to have been reposed in those who procured him to do the act, which, if sustained, relieves him of his property, the law will not protect the holder of the ill-gotten gain.

The defendant invokes the statute of limitations, claiming

that the plaintiffs are now barred from asserting a right to this land or an interest in it. The statute of

**4. Limitation of action: deed conveying dower: action to set aside: when action accrues.**

limitations that governs here is found in Sec. 3447 of the Code of 1897, subdivision 7, which limits the right to ten years. Under any theory of the case, ten years have not expired. Robert Baker died in 1905. This point needs no further consideration, and the case on defendant's appeal is affirmed.

We come now to the consideration of plaintiffs' appeal. It is contended by the plaintiffs and interveners that the evidence discloses that the deed was procured from Eliza Baker by undue influence, and also that she was mentally incapable of making the deed. This is simply a fact question. Under any theory of this evidence, we cannot sustain the plaintiffs' contention. The fact that the defendant was her son, that she had other children for whom no provision was made, the

**3, 5. Deeds: validity: parent to child: consideration inadequate: prejudice against children: effect.**

fact, if it be a fact, that the consideration was inadequate, are not in themselves controlling. They are factors to be considered in determining the ultimate question of mental capacity or undue influence; but, in the absence of

any showing of want of mental capacity or of undue influence, this will not authorize the setting aside of the deed. The property belonged to Eliza Baker. She had a right to determine what the consideration should be. She had a right to give it away if she saw fit, providing no undue influence was exercised in procuring the gift, and providing she had capacity sufficient to enable her to understand what she was doing, and the disposition she was making of her property. We find no ground for disturbing the action of the court on this branch of the case, and on plaintiffs' appeal, the case must be and is affirmed.—*Affirmed on both appeals.*

Deemer, C. J., Ladd and Salinger, JJ., concur.