In re Estate of J. H. Fatland.

Northwestern Land & Investment Company, Appellant, v. S. Louis Ostrem, Executor, Appellee (and one other case).

**EXECUTORS AND ADMINISTRATORS:** Claims—Excuse for Failure
1   to File. The fact that a claimant knew of the death of his debtor soon after it occurred, and was not misled into believing that the claim need not be filed, is material as bearing on the issue whether circumstances justify the filing and allowance of the claim *after* the expiration of the year for filing claims. Evidence held insufficient to constitute "peculiar circumstances entitling the claimant to equitable relief."

**EXECUTORS AND ADMINISTRATORS:** Claims—Assumption of
2   Mortgage as Fourth-Class Claim. The grantee of real estate who assumes and agrees to pay an existing mortgage on the land thereby

creates a "debt" against himself; and, in case of his death, said debt is a "fourth-class" claim, under our statute, even though said debt does not all fall due until after his death.

*Appeal from Story District Court.*—G. D. THOMPSON, Judge.

MAY 13, 1924.

BY agreement, these two cases were consolidated and submitted together in this court. They are claims against the estate, and were not filed within twelve months from the giving of notice by the executor. The trial court held that they were fourth-class claims, and that there were no peculiar circumstances which entitled claimants to equitable relief. The claims were not allowed. Claimants appeal.—*Affirmed.*

*Senneff, Bliss, Witwer & Senneff,* for appellants.

*Lee & Garfield,* for appellee.

PRESTON, J.—Appellant Adams is a resident of Sac County, Iowa. Prior to the fall of 1915, he was the owner of a large tract of land in North Dakota. The appellant land company, which will be referred to hereafter as "the company," a Minnesota corporation, has its place of business at Minneapolis. For a number of years it has been engaged in purchasing and selling land on a large scale in various parts of the country. Mathews has been president from its inception. He maintains his legal residence in North Dakota, but lives in Minneapolis. Prior to 1915, Mathews, acting for the company, entered into an optional agreement with Adams for the purchase of something over 8,000 acres of land in North Dakota. The company took over the deal. This land was purchased from Adams for $500,000, $150,000 being paid in cash, and the balance in numerous mortgages, taken back to Adams. The land involved in these cases is a section, and part of the 8,000 acres referred to.

Fatland, deceased, was a resident of Story County, Iowa. On November 1, 1919, he contracted in writing to purchase from the company the section of land in question, and took possession of the land that fall, under the contract. He bought the land

for $51,200, paid $3,100 in cash, assumed the payment of the four mortgages, aggregating $31,300, as a part of the purchase price, and agreed to pay the balance, $16,800, in one half the grain raised upon the farm yearly thereafter until that amount was paid. He died testate. He executed his will January 1, 1920, and it has been duly probated. The will directs that the executor shall sell all his property, real and personal, and execute and deliver all instruments necessary to pass title thereto, so that the property may first all be converted into money. Testator died May 2, 1920. The will was probated June 25, 1920. The executor, a son-in-law of deceased's, was appointed the same day. Notice of appointment was published July 1, 1920. The widow elected to take under the will. Notice of the two claims was served on the executor February 19, 1922, and they were filed February 24, 1922, to be heard at the March, 1922, term. This was practically a year and a half after the notice of publication.

The claim of the company was for $714.40, alleged to have been advanced by it for taxes upon the land. The other claim, filed in the name of Adams, was for $1,878, interest due upon the mortgages on the land. Later, an amendment to the Adams claim was filed in his behalf, claiming the maturity of the entire indebtedness by reason of failure to pay interest, as provided in the contract. Approximately $33,000 was claimed to be due. The claim of the land company was also amended. In these amendments, copies of the contract, mortgages, notes, will, etc., were set out. The executor in his answer denied generally, and pleaded the bar of the statute, and also that appellants were guilty of laches, and had waived their claim. The pleadings will be referred to again and more fully, later in the opinion, and in connection with a further contention of appellants' that these claims are not fourth-class claims, but claims arising and maturing after the death of the decedent, and that the statute, Section 3349, Code, 1897, does not apply. When the claims were filed, the only matter relied upon as peculiar circumstances entitling claimants to equitable relief, and as an excuse for not sooner filing the claims, was that, on November 1, 1921 (sixteen months after notice of appointment), the executor sent a telegram to the company at Minneapolis, which is as follows:

"Absolutely not in position at this time to take care of interest on North Dakota farm of J. H. Fatland estate. Kindly obtain extension until January 1. Wire or write me."

In response to this, and on November 5, 1921, Mathews, the president, wrote the executor a letter, in which, among other things, it was stated:

"I personally saw Mr. Adams, and while he will not start any foreclosure, he insists that this interest must be taken care of at this time. We also insist that the taxes which we have advanced on this land must be paid to us. In connection with this deal we would like to get our contract with J. H. Fatland filed as a claim against the Fatland estate."

The letter further stated, substantially, that the matter had been taken up with their attorney, who advised that the contract could be filed even at this late date, and asked the executor to advise whether they could handle the matter so as to have the contract filed without submitting it to their attorney.

1. On this branch of the case, we shall refer to some of the circumstances on the question as to whether there were any peculiar circumstances entitling appellants to equitable relief.

1. EXECUTORS AND ADMINISTRATORS: claims: excuse for failure to file.

There is nothing in the record to show that Adams relied on the telegram, or that it was shown to him, except the statement in the letter of November 5th. He knew that Fatland had purchased this land, and knew that the executor, as such, had paid the interest on the mortgages. This was as early as November, 1920, when he received a check from the estate, to pay interest. The telegram was long after the year for proving up fourth-class claims. The request for an extension was not assented to. The record shows that both the company and Adams knew, before the year had expired, that Fatland was dead. The evidence tends quite strongly to show that the company is the real party in interest, as to both claims. Some of the circumstances tending to so show are that, while they were filed separately, the Adams claim was not verified by him, but by an attorney, acting for both. Adams was not present at the trial. He gave no testimony. The attorneys acting for him were employed and are to be paid by the company,—at least, the company was acting for Adams. As early as June 2, 1920,

before the will had been probated, the company's president had been advised of the death of testator. On that date, he wrote the executor that they understood that he was attorney or administrator of the estate of Fatland, and referred to the purchase of the land and the contract obligations assumed, and their claim for seed furnished Fatland. Soon after the receipt of this letter, and on June 19th, the executor wrote the company, suggesting that the company have the seed bill made out in regular form, such as is filed against estates, and forward it to him, and saying that he would remit as soon as he had sufficient funds, and that he appreciated the information given in regard to the land transactions. Thereafter, the seed bill was made out in regular form, allowed, and paid. Mathews, as a witness, testifies that he knew Mr. Fatland was dead and that Mr. Ostrem was to be the executor, as early as June, 1920. The executor had never met Mathews until after these claims were filed, and in March, 1922. The executor is also an attorney, living at Des Moines, Iowa. It appears that at one time, in one small matter, entirely disconnected with this controversy, he acted for the company, for a short time only, and then turned it over to other attorneys.

Upon the execution of the contract, deceased moved on the ·farm, and put improvements on the land, costing about $3,000. The executor, about November 1, 1920, by the check before referred to, paid the interest on the mortgage, which became due to Adams November 1, 1920. He also paid a bill for seed which had been furnished deceased, on a claim regularly filed, as before stated. He also paid for some insurance on the buildings, which he had requested the company's president to write. These three are the only items ever paid to the claimants or either of them by the executor. The executor moved a bunk house on the place for a dwelling which the testator had contracted for. There was no promise by the executor, even if he had power to do so, to pay the claims of these plaintiffs. In the fall of 1921, a son of deceased's, who had taken possession of the farm upon the decease of his father, plowed something over 400 acres of the land. In February, 1921, the executor filed his report, in which he referred to the land contract and his doings thereunder, and the heirs approved the report. At first, the executor expected to

go on with the contract and take the land. In February, 1921, he turned over to the company half the grain for 1920, or the proceeds of the grain. Under the contract, $16,800 of the purchase price was to be paid out of the crops. The company received something over $400 as its half of the proceeds of the crop during the season of 1921, to apply on the said purchase price. The estate received about $230, as its share of the crop. The annual interest due Adams was $1,878; the taxes were about $700; and there was 6 per cent interest on the $16,800,—or a total of approximately $3,500 annually. It is argued by appellee that, with the small return, the $16,800 could not be paid out of the crops, and that the continued ownership of the land by the estate would eventually have involved it in financial ruin. At any rate, there was objection by the heirs, and the contract was abandoned in the fall of 1921, and the company was later notified thereof. At the time of the trial, neither the executor nor the estate made any claim to the land. After the company had been notified of the abandonment of the contract and the land, it had a special administrator appointed in North Dakota, to take charge of the land. About March 1, 1922, the company sued out a writ of attachment in North Dakota.

We have gone somewhat into detail. The foregoing is the substance of the matters bearing on the question as to the claimed peculiar circumstances. There was no deception or misleading conduct on the part of the executor, and nothing to entitle the claimants to assume that the filing of the claims was not expected or required within the statutory time. The failure of claimants to do so was either through neglect, or they relied on the lien on the land. This they had the right to do.

The mortgagee has his option to file a personal claim against the estate, or to rely upon his security. He does not waive his security by filing a personal claim; but, if he chooses to file his claim, he must do so within the time provided by statute. *Allen v. Moer,* 16 Iowa 307, 310; *Merchants' Nat. Bank v. Soesbe,* 138 Iowa 354, 360; *Schumacher v. Dolan,* 154 Iowa 207, 213. There is evidence on the part of claimants tending to show that the land had not been properly farmed, and was not worth as much as when it was sold to deceased. It may be that this and the shrinkage in land values had something to do with plaintiffs'

filing their claims, rather than to rely on the lien. Appellee's evidence tends to show that the land was worth what Fatland paid for it, and that, at about the time the claims were filed, it was worth that much. Deceased put on improvements amounting to $3,000. Under the record, we think there is force in appellee's contention as to waiver, but we deem it unnecessary to discuss that proposition or the question of laches.

It is so clear that no peculiar circumstances were shown, and that claimants were not entitled to equitable relief, that citation of authority seems unnecessary. However, see *McDermott v. Estate of McDermott,* 138 Iowa 351; *Mosher v. Goodale,* 129 Iowa 719, 723; *Bentley v. Starr,* 123 Iowa 657; *Colby v. King,* 67 Iowa 458; *Roaf v. Knight,* 77 Iowa 506; *Davis v. Shawhan,* 34 Iowa 91; *Schlutter v. Dahling,* 100 Iowa 515; *Boyle v. Boyle,* 126 Iowa 167; *Hawkeye Ins. Co. v. Lisker,* 122 Iowa 341; *In re Estate of Ring,* 132 Iowa 216; *In re Estate of Jacob,* 119 Iowa 176; *Ferrall v. Irvine,* 12 Iowa 52. The trial court ruled properly, unless appellants' contention that this claim arose and matured after the death is well taken.

2. On the claim of appellants just stated, it is necessary to refer to some other circumstances in the record. Referring first to the statutes. Section 3348, Code Supplement, 1913, fixes the order of payment of claims. There are four classes. The fourth is "all other debts." Section 3349, Code, 1897, is the special statute of limitations as to the fourth of the above classes. Section 3342, Code, 1897, provides that:

2. EXECUTORS AND ADMINISTRATORS: claims: assumption of mortgage as fourth-class claim.

"Demands not yet due may be presented, proved, and allowed as other claims."

Section 3343, Code, 1897, provides that:

"Contingent liabilities must be presented and proved, or the executor * * * shall be under no obligation to make any provision for satisfying them when they accrue."

In *Savery v. Sypher,* 39 Iowa 675, *Wickham v. Hull,* 102 Iowa 469, 471, and *Easton v. Somerville,* 111 Iowa 164, it was held that, under the statute, now Section 3349, the limitation applies only to claims existing at the time of the death of the decedent, and not to debts subsequently incurred by the estate. In the *Easton* case, there was the further point that a ward filing

a claim was not a creditor of the estate of her said guardian until coming of age. Appellants contend that, under the foregoing authorities, their claims were not of the fourth class, and that, therefore, the limitation does not apply. The contention cannot be sustained. It is true that the entire amount of these claims, and particularly the notes and mortgages assumed by the testator, were not all due at the time of his death, and would not be until the mortgagee had exercised his option of declaring all due for nonpayment of interest. But that they were a debt of the testator's, arising before his death, we have no doubt. The statute before quoted provides that claims not due may be allowed. We may concede, for the purposes of the argument, that the heirs may, where there is a contract for the purchase of land, call on the executors or administrators to discharge the contract out of the personal estate, so as to enable them to demand a conveyance from the vendor, and that, in a sense, the executor stands in the shoes of the deceased or of the heirs, had Fatland died intestate; that the executor is bound by the contracts of testator. But that is not quite the question presented. We have seen that the mortgagee may, at his option, file his claim against the estate or rely on his security. The real question is whether this was a debt of the testator's which arose during his lifetime, and whether, conceding that the contract of deceased is binding upon the heirs and executor, the claimants are excused for failure to comply with the statute with reference to the time when action must be taken upon the obligations after the death of the obligor. We think that this does not excuse the filing of the claims according to the statute; neither does the fact that the executor made a report of his doings. The company's claim was for money alleged to have been advanced by it for taxes upon the land which decedent had contracted to purchase from the company during his lifetime. The taxes which the company claims to have paid on October 15, 1921, were taxes for the year 1920. The president of plaintiff company testifies that taxes in Dakota are delinquent in March, and are due as early as November. From this it appears that the taxes for 1920 were delinquent in March, 1921. This was several months before the expiration of the year for administration and filing fourth-class claims. By the contract, deceased agreed to

pay the taxes before they became delinquent. This claim, then, could have been filed in ample time. The property would have been sold for these taxes in November, 1921. The contract between deceased and the company provided that Fatland should pay the taxes when due, and before the same became delinquent, beginning with the taxes for the year 1920. In the contract between deceased and the company, deceased assumed and agreed to pay the mortgages held by claimant Adams. The mortgages provided:

"In case of the nonpayment of any sum of money (either principal, interest, insurance money, taxes, assessments or for repairs) at the time or times when the same shall become due then in such case the whole amount of said principal sum shall be deemed to have become due and payable and, shall thereupon be due and collectible in a suit at law or by foreclosure."

When deceased assumed the payment of the taxes, mortgages, and the interest thereon, he obligated himself to pay them. They were debts arising in his lifetime. Whatever legal rights of any kind either of the claimants had against the estate are solely by reason of the written contract. Appellee concedes appellants' contention that ordinarily the written contract binds the executor or personal representatives of the obligor.

One or two other questions are argued briefly, but those discussed are controlling. Further discussion seems unnecessary. We are of opinion that the rulings of the trial court were right, and the disallowance of the claims and the judgments are —*Affirmed.*

ARTHUR, C. J., EVANS and FAVILLE, JJ., concur.