LAURENCE THOMPSEN ET AL. ⎫
    vs.      ⎬ December Term, 1849.
AUGUSTUS DIFFENDERFER ET AL.⎭

[RECEIVER—RULES OF EVIDENCE AND PRACTICE.]

THE court interposes, by appointing a receiver against the legal title, with reluctance, and fraud, or imminent danger, if the intermediate possession should not be taken by the court, must be clearly proved.

Though the court will not, by the appointment of a receiver, deprive a prior mortgagee, having the legal title, of his right of possession, it will not permit him to object to such appointment, by any act short of a personal assertion of his legal right, and taking possession himself.

The power of appointing a receiver, is a delicate one, and to be exercised with prudence and circumspection, yet, upon a sufficent cause stated and proved, the court will exercise the power, though, by so doing, the business of the defendants as merchants would be broken up.

It was urged, that the defendants should be required to offer proof in support of some of the statements of the answer, though responsive to the bill; because such proof was within their reach, whilst it was inaccessible to the complainants. HELD—

That the rule, that the answer, when responsive to the averments of the bill, shall be taken as true, unless discredited by two witnesses, or one witness with pregnant circumstances, is not subject to the modification which the introduction of such a principle would involve.

[The original and amended bills in this case, were filed by certain of the creditors of the firm of Diffenderfer and Brothers, against the members of said firm, and Sampson Cariss and Catharine S. Diffenderfer, stating that the defendant first named had commenced business in the city of Baltimore about the year 1846, and by falsely representing the extent of their means, had obtained credit with the several complainants and others, to a large amount; that about the month of October, 1849, they ceased to pay their debts, and afterwards called a meeting of their creditors, but at the meeting, and at others subsequently appointed by them, and in fact ever since, had refused to exhibit to their creditors the state of their affairs, putting them off on various pretences; that since their suspension they had refused to pay their creditors in whole or in part, but had been engaged in selling off their goods for cash, and ap-

propriating the proceeds to their own uses, and in this manner wasting and dissipating their resources ; that they had sent beyond the reach of their creditors large quantities of goods; that they had stated that they had made no transfer of their stock of goods to any one, nor created any lien upon the same, whereas in fact they had made two several bills of sale of their whole stock of goods, the one to Sampson Cariss and the other to their mother, Catharine S. Diffenderfer, to secure them in large sums of money, alleged to have been loaned by them ; and that these liens were created whilst they were insolvent, and had no expectation of extricating themselves from their difficulties except by taking the benefit of the insolvent laws.    That at the time of calling together their creditors, the defendants (as complainants were informed) admitted their insolvency ; and that Catharine S. Diffenderfer, at the period of the execution of the bill of sale to her and for a long time previous, was in no condition, from her own want of means, to lend money.    That defendants had been warranted for sums of money less than a hundred dollars, and although admitting the justice of the claims, they had interposed injurious and improper obstacles to a recovery thereof, so that with the utmost diligence, judgments could not be recovered against them before the month of May, 1850, by which time their assets would be wholly wasted. That since the execution of said bills of sale, the defendants had held the property conveyed by them, or a large portion thereof, and were selling the goods without accounting with the grantees or to any of the creditors, for the proceeds of sale.

The bill concluded with a prayer for the appointment of a receiver, and for an injunction to restrain the defendants from. proceeding with the business of the firm.    The Chancellor granted the injunction, but ordered the application for the receiver to stand over for the coming in of the answers.

The answer of the defendants, Diffenderfer, admitted that they began business as grocers in the city of Baltimore, in 1846, and had since continued to prosecute the same, but denied that they had ever falsely represented to the complainants

the state of their affairs, or obtained credit from them or others thereby. They admitted their liability to the complainants, but denied that they had ever ceased to carry on their business, until restrained by the injunction, or had ever discontinued the payment of their just debts and liabilities, having, on the contrary, applied their receipts to the payment of large sums to their most importunate creditors. They admitted having called a meeting of the creditors of the firm, their object having been to procure an extension of time from them, which they believed would have relieved them from their embarrassments, and stated, that at the request of some of the creditors present, they undertook to prepare an exhibit of the state of their affairs, but that some of the complainants to whom they showed the result, pronounced their statement false and fabricated ; whereupon they offered to have their books examined under the supervision of one of the clerks of the complainants, and had always been ready to do so ; that their books have ever been open to the inspection of their creditors, and that many of them, not parties to the bill, to whom they had been shown, expressed a willingness to continue their business relations with them. The defendants stated, that they were perfectly solvent, and had been so, ever since they began business, and never did admit the contrary to any one, nor did they ever state that they had created no liens upon their stock, but averred that some of the complainants, at least, had notice of said assignments immediately after they were made, that said assignments were not made in fraud of creditors, or with intent to take the benefit of the insolvent laws, but were made to secure the grantees on account of loans made by them to the defendants, and in compliance with promises made them by defendants, to secure them in that way whenever they should request it; and that it was only at the urgent request of the grantees that they had executed the bills of sale. They stated that they had been selling off their goods prior to the injunction, but without any deviation from the usual course of business, and had applied their receipts to the payment of their debts, or the replenishing their stock in trade ; and that

they had been pursuing a course of rigid economy in their private expenses. That they had not at any time sent out of the city of Baltimore, any portion of their stock, with the intent to diminish the same or defraud their creditors. That their mother was not, nor had she been, in embarrassed circumstances, unless produced by the assistance she rendered to them ; and that instead of her being supported by them, she had always refused to charge them any thing for their board, &c. They admitted that they had been warranted for various sums under one hundred dollars, and had procured the removal of said cases from the jurisdiction of the magistrate's courts, and had complied with such requirements as were necessary to secure the advantages of such proceedings, but denied that they had admitted that the claims for which they were warranted were justly due, or that they intended to interpose improper obstacles to their recovery. They stated that it was true, that if any of their creditors were to bring actions at law against them, they could not, by using the utmost diligence, obtain judgments thereon before the month of May, 1850, but that none of the complainants had brought such actions, and that the assets of the firm were not being wasted in the mean time. They admitted the retention of possession of the property conveyed to Cariss and Mrs. Diffenderfer, with their permission, but denied that the proceeds of the sales made in the due course of their business were not paid over to the grantees or other creditors. They stated that their stock in trade consisted of perishable articles, and that great losses to them would be produced by a continuance of the injunction ; and that no injunction bond had been filed by the complainants.

The answer of these defendants having been filed, an order was passed by the Chancellor, requiring the complainants to file an injunction bond, and so far modifying the injunction as to permit the defendants to sell their goods according to their usual course of business, and make such new purchases as were necessary, requiring them first to give bond to render an account of such sales and purchases.

Testimony was afterwards taken by the complainants to sup-

port the allegation of their bill, and the case having been heard on the application for a receiver, and the motion to dissolve the injunction, the Chancellor delivered the following opinion :]

THE CHANCELLOR:

This case is brought before the court upon the motion to dissolve the injunction, in connection with which the application for the appointment of a receiver has been argued ; and it is quite manifest, and has not been controverted, that if the injunction should be continued, it would be proper and necessary to put a receiver upon the property—and if, on the contrary, it should be thought proper, under the circumstances, to refuse the application for a receiver, the .injunction should be dissolved, as in that event its continuance would only embarrass and injure the defendants in the prosecution of their business without benefit to any one.

The question to be considered, therefore, is, whether under the circumstances of this case, a receiver should or should not be appointed?

In the case of *Williamson* vs. *Wilson*, 1 *Bland*, 418, the late Chancellor laid down with precision, and, as I think, in entire conformity with the authorities, the principles which should govern the court upon applications similar to the present. It was there said, that "the court reluctantly interfered against the legal title only in the case of fraud clearly proved, and of imminent danger ; and a receiver will not be appointed when the matter depends upon the legal title, unless strong grounds are shown, and the rents and profits are in imminent danger." In *Lloyd* vs. *Passingham*, 16 *Ves.*, 69, 70, Lord Eldon said, "the court interposes by appointing a receiver against the legal title with reluctance, compelled by judicial necessity, the effect of fraud clearly proved, and imminent danger, if the intermediate possession should not be taken under the care of the court." In the case of *The Orphans' Asylum* vs. *McCartee*, 1 *Hopkins*, 435, it .was said, "the fund must be shown to be in danger before a receiver will be appointed." "The court never ap-

points a receiver merely because the measure can do no harm."
"This principle reconciles the cases found in the books."

The bill in this case alleges a variety of facts, which do show
the fund to be in danger, and if proved to be true, or admitted,
would be sufficient to overcome the reluctance of the court to
interpose against the legal title, and take the possession of the
property under its care, as a measure of safety. It alleges, that
the defendants, the Diffenderfers, are insolvent, and wasting and
misapplying the property from which the creditors could only
expect to be paid; and there would seem to be no doubt of the
power, and the duty of the court to interpose in such a case,
even against the opposition of the mortgagees, Cariss and Ca-
tharine R. Diffenderfer; for though in the case of a prior mort-
gagee, having the legal title, the court will not, by the appoint-
ment of a receiver, deprive him of his right of possession, it
will not permit him to object to such appointment by any act
short of a personal assertion of his legal right, and taking pos-
session himself. *Silan* vs. *The Bishop of Norwich,* 3 *Swans.,*
112—115.

And as the defendants, the mortgagees in this case, do not
propose exerting their legal rights by taking possession; but,
on the contrary, express their willingness and consent that the
mortgagors shall continue in possession of the property, and
employ and dispose thereof in their business, it follows that the
mere existence of the mortgages executed for their security,
would not induce the court to forbear from appointing a receiv-
er, if, independently of such mortgages, it would be proper to
do so.

The question, therefore, is, have the complainants made out
by clear proofs, or admissions, such a case as, according to the
established principles regulating this branch of the jurisdiction
of this court, entitles them to its interposition in their behalf,
by appointing a receiver?

It is conceded that the power is a delicate one, and to be ex-
ercised with prudence and circumspection; and there can be no
doubt that in the case of a commercial firm actually engaged
in trade, the power of the court, as invoked upon the present

occasion, could only be vindicated by an unusual and pressing emergency, which would leave it no alternative. The absolute necessity of putting its hand at once upon the property, to save it from destruction or loss, must be clearly shown, or in the language of Lord Eldon, "fraud or imminent danger, if the intermediate possession should not be taken by the court, must be clearly proved."

In this case, as before observed, there can be no doubt that the facts charged in the bill do present an aspect of imminent danger, and contemplated, if not actual fraud, which would constitute the judicial necessity that would justify the court in putting forth its power to preserve the property, by the strong measure of taking possession of it; though by so doing the business of the defendants, as merchants, would be broken up.

But the facts charged in the bill are denied by the answer of the Diffenderfers, and though a strong effort has been made to break down the answer, by exhibiting supposed inconsistencies and contradictions in its several statements, and dwelling with emphasis upon the improbability of some of the facts averred in it, I cannot, after a careful examination, bring myself to the conclusion, that it is not entitled to the weight usually allowed to answers in chancery.

I do not find in it any statements which may not reasonably be reconciled with other statements contained in it; and with regard to the argument founded upon the assumed improbability of its truth, it may be observed, that the defendants have spoken under the solemn responsibility of an oath, and with all the penalties, temporal and eternal, of perjury, full before them. Under the weight of these heavy sanctions, they have denied each and all of the allegations of the bill, upon the admission or proof of which, the right of the court to appoint a receiver depended.

It has been urged, that with respect to some of the statements of the answer, though responsive to the bill, the defendant should be required to offer proof in their support; because such proof was within their reach, whilst it was inaccessible to the complainants. But I apprehend, the rule that the answer,

when responsive to the averments of the bill, shall be taken as true, unless discredited by two witnesses, or one witness with pregnant circumstances, is not subject to the modification which the introduction of such a principle would involve. The rule rests upon a principle which protects it from the modification insisted upon, and that is, that the complainant, by addressing himself to the conscience of the defendant, makes him a witness, and must take his answer as true, unless he can overcome it in the way suggested.

Finding, then, that the allegations of the bill were denied by the answer, I looked carefully into the evidence taken under the order of the court, to see how far the complainants had been successful in proving their case ; and without here analyzing the evidence, or going into a detailed examination of it, I deem it sufficient to say, that I do not think it sufficient to overcome the denials of the answer. Several of the witnesses, it is admitted, are incompetent, and their depositions are excluded from the inquiry. My attention has been directed to the competent proof, and that, I think, is insufficient. The motion for a receiver must be refused, and the injunction dissolved.

[No appeal was taken from this order.]