## CHRISTIAN PEPER BUSHMAN et ux. v. ESTELLE PEPER BUSHMAN, Appellant, and CHRISTIAN PEPER.

### Division Two, December 22, 1925.

1. **RECEIVER: Appointment: Extent of Review.** The power of a court to appoint a receiver in a suit to set aside conveyances of real estate is neither absolute nor arbitrary, but the propriety of its exercise is subject to review and the refusal of the trial court to vacate an order appointing a receiver will not be upheld, unless upon a careful scrutiny of all the facts it appears that its action was for the best interests of the parties. It must appear from an examination of all the facts in the record that the appointment of the receiver was the exercise of a wise judicial discretion for the promotion of justice, made necessary by the absence of any other adequate remedy.

2. ———: ———: **Conditions.** To authorize the appointment of a receiver to take charge of real estate in possession of defendant pending the determination of a suit to cancel conveyances thereof to her, the proof must clearly establish (a) a deterioration or waste of the property, (b) the insolvency of the defendant and (c) a reasonable probability that the plaintiff will prevail on the merits.

3. ———: ———: **Deterioration.** Deterioration in the value of real estate, due to age, is not a ground for disturbing the possession of one holding under a record title adversely to plaintiff.

4. RECEIVER: Appointment: Deterioration: Repairs: Lease. Defendant, having borrowed money to purchase real estate and executed to the lender a mortgage by which she authorized him to colect the rents and all other revenue and apply them to the payment of taxes, expenses of operation, insurance, repairs, established claims for damages and alterations in buildings, is not so far chargeable with neglect to make repairs as will authorize the appointment of a receiver pending a suit to set aside the conveyances to her.

5. ——: ——: Insolvency: Pleading. An allegation that defendant is insolvent, unaccompanied by a statement of facts from which insolvency is made to appear, is a mere conclusion, and insufficient to authorize the appointment of a receiver of the real estate pending a suit to set aside a conveyance thereof to defendant. And a statement in plaintiff's affidavit that defendant "is insolvent, except in so far as any interest she may have in the property involved in this litigation," nullifies such general allegation. And plaintiff further nullifies the allegation by alleging that defendant has a one-third interest in the property in suit, which is shown to be worth $315,000 above all incumbrances. Insolvency does not mean that defendant is required to keep enough property, outside of that claimed by plaintiff, to protect her from being ousted from its possession by the appointment of a receiver pending a suit to cancel her deeds to it.

6. ——: ——: Probability of Recovery: Judgment in Partition: Finality. A decree in partition determines the validity of the title of all parties to the suit; and in a subsequent suit brought by the heir of one of the coparceners to cancel a commissioner's deed made in pursuance of said decree to said coparcener and the deed from said grantee to the defendant, the presumption is, in the absence of an allegation to the contrary, that the requirements of the statutes were complied with in the partition suit, and the decree ascertaining and declaring the interest of the parties in the lands, including the interest of said coparcener, is to be regarded as *res adjudicata*, and there is therefore no such probability that the plaintiff will recover on the merits as will authorize the appointment of a receiver to take charge of the real estate pending the suit to set aside the deeds.

7. ——: ——: ——: ——: Fraud: Pleading. The propriety of the court's action in appointing a receiver in an action to cancel a deed to defendant is to be measured first by the allegations of the petition asking for the appointment; and while an allegation that the commissioner's deed in partition conveying the land to defendant is void and subject to cancellation on account of fraud practiced upon the commissioner by defendant in procuring the same may be considered as an assault upon the validity of the judgment in the

partition suit under which the deed was made, still if it states no facts constituting a cause of action for fraud, it will not authorize the appointment of a receiver to take charge of the lands while the suit is pending. A petition which relies upon fraud as a basis of relief must state the facts constituting the fraud, and such facts must constitute a cause of action for fraud. And particularly, should there be no appointment of a receiver, where there is no proof to sustain the general charge of fraudulent acts.

8. **CONVEYANCE: Assault upon Deed by Heir: Fraud: Estoppel.** Where the deed in partition by a commissioner recited that a mother was the owner of a one-third interest and a daughter was the owner of a two-thirds interest in the land, and the mother afterwards conveyed to the daughter, a son who brings suit to cancel the deceased mother's deed stands in her shoes, and he can assert no fraud or invalidity in the proceedings which his mother could not have asserted; and being a party to the partition suit, and barring fraud and mental incapacity, she was bound by the commissioner's deed and by her deed to the defendant daughter, and would not have been heard to assail the regularity or assert the invalidity of either, but was estopped from denying that her former title and right of possession were extinguished by the partition judgment, order of sale and conveyance.

9. ———: **Cancellation: Mental Incapacity: Undue Influence: Confidential Relation.** To set aside a deed on the ground of mental incapacity it must be shown that the will of the grantor was overcome. Proof of a weak mind is not sufficient unless it is shown that there was such lack of capacity as destroys the will, and especially if the grantor reposed confidence in the grantee and executed the deed without solicitation, free from unfair influence exercised by the grantee. And the undue influence must have been exercised before and up to the very time of the conveyance. The mere fact that the grantor was old and that her deed is a voluntary one to a daughter with whom she has lived for years on terms of affection are not sufficient ground for cancelling a deed in the absence of incapacity, fraud and undue influence.

10. ———: ———: **Appointment of Receiver: Counter Affidavit: Mental Incapacity.** The court is not authorized to appoint a receiver to take charge of the real estate pending a suit to cancel deeds upon the presentation of affidavits by plaintiff, to the effect that the grantor was mentally incapacitated to make them, where defendant's sworn answer and separate affidavit deny grantor's incapacity, unless plaintiff introduces in support of his petition such evidence as will overcome the denials of the answer. And in this case plaintiff presented such proof of the grantor's business transactions as destroys his general allegation of her mental incapacity.

11. **MENTAL INCAPACITY: Evidence of Prior Condition: Remoteness.** Testimony by nurses that the grantor was mentally incapacitated in 1920 is no proof that she was lacking in mental capacity in 1911 when she made the deed sought to be cancelled.

Corpus Juris-Cyc. References: Appeal and Error, 4 C. J., Section 2769, p. 804, n. 96. Deeds, 18 C. J., Section 134, p. 222, n. 82, 83, 84; Section 163, p. 236, n. 75; Section 169, p. 240, n. 32, 33. Insane Persons, 32 C. J., Section 172, p. 631, n. 86. Insolvency, 32 C. J., Section 1, p. 806, n. 12. Judgments, 34 C. J., Section 1290, p. 882, n. 31; Section 1329, n. 921, n. 78; Section 1343, p. 938, n. 67; Section 1357, p. 952, n. 60. Landlord and Tenant, 36 C. J., Section 766, p. 125, n. 60, 62; Section 769, p. 130, n. 14. Pleading, 31 Cyc., p. 43, n. 3; p. 55, n. 12. Receivers, 34 Cyc., p. 19, n. 31; p. 20, n. 32; p. 23, n. 49, 50; p. 47, n. 59; p. 50, n. 67; p. 51, n. 69; p. 54, n. 79; p. 101, n. 84; p. 102, n. 87 New; p. 104, n. 94; p. 106, n. 3 New; p. 111, n. 39; p. 113, n. 45; p. 131, n. 42; p. 133, n. 47 New.

Appeal from St. Louis City Circuit Court.—*Hon. W. H. Killoren*, Judge.

REVERSED AND REMANDED (*with directions*).

*Harry H. Haeussler* and *Chas. J. Macauley* for appellant.

(1) The general rule is that a court of equity will not appoint a receiver to take charge of and manage real estate, or.the proceeds thereof, in the possession of defendant holding under a regular title, pending the suit over the title thereto. Folk v. United States, 233 Fed. 183; Tardy's Smith on Receivers, p. 514, sec. 209; Ryder v. Bateman, 93 Fed. 28; Rollins v. Henry, 77 N. C. 467; Schlecht's Appeal, 60 Pa. St. 175; Beach on Receivers, sec. 485; Vaus v. Woods, 46 Miss. 120; Mapes v. Scott, 4 Ill. App. 270; Kelly v. Steele, 72 Pac. 887; Hoover v. Rhoads, 6 Iowa, 504; Corbin v. Thompson, 141 Ind. 129; Cecil v. Cecil, 223 S. W. 1094; 34 Cyc. Law & Procedure, 51. (2) To the general rule that a court of equity will not appoint a receiver to take charge of and manage real estate or the proceeds thereof pending suit there are exceptions; but for the plaintiff to bring his case within these exceptions, he must establish by clear proof: (a) that there is eminent danger that unless a receiver is appointed the property or its proceeds will be deteriorated in value or wasted during the pending of the suit; (b)

that the defendant is insolvent; and (c) that on the pleadings and preliminary proofs there is a strong probability that plaintiff will ultimately recover on the merits. Folk v. United States, 233 Fed. 183; Tardy's Smith on Receivers, p. 514, sec. 209. (3) The plaintiffs failed to bring their case within the exceptions above mentioned, and therefore the trial court erred in appointing a receiver and in refusing to revoke its order appointing the receiver. (4) All of the presumptions of law are in favor of the party in possession under a legal title. And the burden of proof rests on plaintiffs to make out a clear case to entitle them to the appointment of a receiver *pendente lite*. Kelly v. Boetcher, 89 Fed. 128; Folk v. United States, 223 Fed. 183. (5) While courts of equity have the right and power in proper cases to appoint a receiver to take charge of and manage real estate pending the litigation over the title thereto, this power is not an arbitrary or absolute one, but one which can and should be exercised only when the facts in the case warrant the use of it. And the decision of the trial court is subject to review on appeal. Price v. Trust Co., 178 S. W. 750; 4 Pomeroy's Equity Jurisprudence (4 Ed.) sec. 1331; Lemker v. Kolberloch, 105 Ill. App. 445; Moore v. Bank, 106 Fed. 579. (6) On appeal from an order of the trial court in refusing to revoke the appointment of a receiver pending the suit, this court will review the entire record before the court, and determine therefrom whether there was any ground upon which the receiver should have been appointed, or upon which the court should have refused to revoke the appointment, as the case may be. Merrian v. Railroad, 136 Mo. 145; State ex rel. v. Hirzel, 137 Mo. 445. (7) Plaintiffs' petitions did not state facts sufficient to constitute a cause of action; nor were any of those petitions properly verified, and, therefore, the trial court erred in issuing an order to show cause and in overruling defendants' motion to set aside said order. High on Receivers, p. 719; Union Boom Co. v. Somish River Boom Co., 74 Pac. 54; Benepe-Owenhous Co. v. Scheidegger, 32 Mont. 430. (8) An heir has no better title to the land than his ancestor had

at the time of his death, and in attacking a deed made by the ancestor in his lifetime the heir stands in the ancestor's shoes. Coulson v. Coulson, 180 Mo. 709. (9) A petition in an action grounded on fraud must state facts constituting the fraud. A mere allegation that the acts complained of were fraudulently done is not sufficient. The allegations in plaintiffs' petition were not sufficient to charge defendant with fraud in obtaining the Special Commissioner's deed in partition. Smith v. Sims, 77 Mo. 274; Williams v. Railroad, 112 Mo. 496; Nicholas v. Stevens, 123 Mo. 117; Lee v. Lee, 258 Mo. 599. (10) The allegation in plaintiffs' petition "that said Estelle Peper Bushman is insolvent," states only the pleaders' conclusion and is insufficient. Railroad Construction Co. v. Schack, 40 N. J. 226; Trust Co. v. Consolidated Electric Storage Co., 49 N. J. 402; Smith v. Sims, 77 Mo. 274. (11) Caroline J. Peper was a party defendant in the partition suit to partition the land in question. And the question of the validity of the deed dated January 14, 1911, from Caroline J. Peper to appellant, was determined in that suit and that question was, at the time this suit was filed, *res judicata*. Forder v. Davis, 38 Mo. 107; Hart v. Steedman, 98 Mo. 456; Smith v. Kiene, 231 Mo. 215; Ketchum v. Christian, 128 Mo. 38; Pentz v. Kuester, 41 Mo. 450.

*N. Murry Edwards* and *McLaran & Garesche* for respondents.

(1) "The court, or any judge thereof in vacation, shall have power to appoint a receiver, whenever such appointment shall be deemed necessary, whose duty it shall be to keep and preserve any money . . . and to keep and preserve all property . . . pending any legal or equitable proceeding concerning the same." Sec. 1449, R. S. 1919. (2) The appointment under the provisions of Sec. 1449, R. S. 1919 (Sec. 753, R. S. 1899), is addressed to the sound discretion of the circuit court . . . and is rightfully exercised whenever it reasonably appears that the preservation of the property in-

volved in the suit, or the securing and preserving its rents and profits (if real estate), will be jeopardized if a receiver be not appointed. Stark v. Grimes, 88 Mo. App. 413. (3) The statutory words "whenever such appointment shall be deemed necessary" vest in a circuit judge a discretion in such behalf so broad as only to be a matter of review by an appellate court in case of palpable abuse. Abramsky v. Abramsky, 261 Mo. 117; Commonwealth Finance Co. v. Mo. Motor Bus Co., 233 S. W. 168; Stark v. Grimes, 88 Mo. App. 409; State v. Ittner, 263 S. W. 163. (4) But the circuit court, independent of Sec. 1449, R. S. 1919, had authority to appoint a receiver. The section referred to does not shorten the arm of a court of equity, since no words of preclusion are used in that section. Cox v. Volkert, 86 Mo. 511; Greeley v. Provident Sav. Bk., 103 Mo. 222; Miller v. Perkins, 154 Mo. 637; Commonwealth Finance Corp. v. Mo. Motor Bus Co., 233 S. W. 168. (5) Where the party in possession is guilty of careless management, or wantonness, or where by reason of improper care and attention from anyone the property is liable to be lost or damaged from any cause, the court in the exercise of its undoubted right will by its receiver take the property into possession and preserve the same until such time as the rights of the litigants are determined. 1 Tardy's Smith on Receivers, p. 30. (6) The only question involved herein goes to the correctness of the court's action in appointing a receiver. While the appeal involves incidentally the goodness on demurrer of the plaintiff's petition, demurrability is but adventitious, since no appeal lies in the middle of a case from the holding good of a petition on demurrer without final judgment. Abramsky v. Abramsky, 261 Mo. 125. (7) Under the law of this State respondent's petition need not have been verified at all. Fisher v. Patton, 134 Mo. 32, 54. (8) Plaintiff's petition is not alone grounded upon fraud, but is grounded as well upon mental incapacity and undue influence arisig out of a fiduciary business relationship shown by the allegations of the petition to have existed. The allega-

tions of plaintiff's petition as to fraud are sufficient in that the matters and facts constituting fraud have been pleaded. Lee v. Lee, 258 Mo. 599; Canty v. Halpin, 242 S. W. 102. (9) On appeal from an order of the trial court appointing a receiver and refusing to vacate and revoke said order on motion of defendant, this court will not consider the merits of the cause, but merely the propriety of appointing a receiver. Commonwealth Finance Corp. v. Motor Bus Co., 233 S. W. 168.

WALKER, P. J.—This is a suit in equity brought in the Circuit Court of the City of St. Louis by the plaintiffs against the defendants to set aside certain deeds and that a receiver *pendente lite* be appointed, and for such other orders, etc., as to the court may seem just.

The circuit court appointed a receiver as prayed and he qualified and entered upon the discharge of his duties as such. Upon this appointment a motion was filed by the defendant Estelle Peper Bushman, to vacate and set aside the court's order, which being overruled, an appeal, under the authority of Section 1469, Revised Statutes 1919, was perfected by her to this court.

Two of the deeds in controversy were executed by Caroline J. Peper to Estelle Peper Bushman; one was dated January 14, 1911, and conveyed the grantor's undivided eleven-sixtieths interests in ten parcels of improved real estate in the city of St. Louis, particularly described in plaintiffs' petition; the other deed was dated April 9, 1920, and conveyed a house and lot, known as Number 4448 Washington Avenue, in the city of St. Louis, which property is also conveyed by Caroline J. Peper to Estelle Peper Bushman in the tenth subdivision of the real estate described in the plaintiffs' petition.

The third deed, dated June 1, 1917, sought to be cancelled was executed by Charles C. Collins, as a special commissioner of the Circuit Court of the City of St. Louis, in a partition suit wherein the St. Louis Trust Company et al. were plaintiffs, and Caroline J. Peper and Estelle Peper Bushman and others were defendants,

which had been instituted by the Trust Company and others to partition the real property described in the plaintiffs' petition, except the house and lot, Number 4448 Washington Avenue. Upon a sale of this land in the partition proceeding Caroline J. Peper and Estelle Peper Bushman became the purchasers thereof and the court ordered a deed made to them for the same. By the terms of this deed the special commissioner conveyed said property, except the house and lot, Numbered 4448 Washington Avenue, to Caroline J. Peper and Estelle Peper Bushman in proportions as follows: One-third to Caroline J. Peper; and two-thirds to Estelle Peper Bushman.

Caroline J. Peper is the common source of title to the real property here in controversy. [Pullen v. Hart, 293 Mo. 61.] She is in this record only by reason of that relation, as she died in August, 1920. To render subsequent relevant facts more easily understood an epitome of a portion of her history is pertinent. In her young womanhood she married one F. W. Bushman. In the after years she divorced him and the decree restored her maiden name. There were two sons, Clarence and Christian, and a daughter, Estelle, born of this marriage. The eldest son, now deceased, upon his mother's divorce, thereafter chose to take her family name of Peper, and the other son and the daughter were content to retain the name of their father. Christian Peper Bushman and his wife are the plaintiffs herein, and Estelle Peper Bushman and the minor, Christian Peper, son of Clarence, are the defendants.. In short, this is a suit by a brother against a sister and a minor nephew to cancel two deeds made by the mother to the sister and a later deed made to the mother and sister by a special commissioner under the decree and order of the circuit court in the partition proceeding.

I. The vital question, an affirmative answer to which is necessary to sustain the action of the trial court, is, did the facts authorize the appointment of a receiver?

**Receiver: Appointment.** It is unnecessary to discuss, except in passing, the power of a court of equity to appoint a receiver. That power is inherent and in this jurisdiction has been given legislative sanction. [Sec. 1449, R. S. 1919.] The existence of the power as we have frequently said is neither absolute nor arbitrary. The propriety of its exercise is always subject to the review of the appellate court and should not be upheld unless, from a consideration of all of the facts, it appears that the court's action was for the best interests of the parties. The extent of the appellate court's inquiry is the entire record. In thus bringing all of the facts under review to determine the merit of the appointment, the appellate court's power is more extended than in an ordinary appeal in which the review is limited to the matters of error preserved in the motion for a new trial, the weight of the testimony of a substantial nature being left to the jury. Upon an appeal, as at bar, from a refusal of the trial court to vacate an order appointing a receiver the discretion of the court in making the appointment will be scrutinized in the full light of all of the facts. [Merriam v. Railroad, 136 Mo. 145; Haven v. Railroad, 155 Mo. l. c. 225.] What was said in effect by RAGLAND, J., speaking for the court in Comm. Fin. Corp. v. Mo. Motor Bus Co., 233 S. W. (Mo.) l. c. 168, is pertinent in this connection, as follows: "In reviewing the action of the trial court we should look to the same matters that were presented to it for consideration on the application for a receiver, viz., the petition, the return to the order to show cause and the evidence submitted by the parties in the form of affidavits and depositions in support of their respective contentions." This extended power of the appellate court in cases of this character is granted to enable a speedy ending to be made of an injudicious appointment and thus prevent the hardships that might result from depriving parties of the possession of their property for long periods of time. [State ex rel. Railroad v. Hirzel, 137 Mo. l. c. 445; St. L. Ry. Co. v. Wear, 135 Mo. l. c. 259.] If it be found

upon such an examination, therefore, that a trial court has exercised a wise judicial discretion for the promotion of justice, in the absence of any other adequate remedy, in the appointment of a receiver, its action should be approved. Otherwise not. [Price v. Banker's Trust Co., 178 S. W. (Mo.) 745; Moore v. Bank, 106 Fed. 579; Lemker v. Kalberlah, 105 Ill. App. 445; 4 Pomeroy, Eq. Jur. (4 Ed.) sec. 1331.]

In numerous adjudications it is held that proof must be clearly made of the concurrent existence of certain well-defined conditions to authorize the appointment of a receiver. These cardinal conditions are: (1) the deterioration or waste of the property; (2) the insolvency of the defendant; and (3) a reasonable probability that the plaintiff will prevail on the merits.

The reason for the proof of these conditions precedent to the exercise of the power, is that it is purely auxiliary or provisional and as such permits the possession and right of enjoyment of property to be transferred from the owner to a receiver before the decision of the case on the merits. [State ex rel. Merriam v. Ross, 122 Mo. 435, 23 L. R. A. 534.] This being the character of the power, its exercise involves, when it is sought to secure the appointment of a receiver for real property, a delicacy of discrimination and a degree of responsibility greater than that of any other conferred upon a court, and it should be exercised with caution and only when it becomes a necessity. [St. L. Natl. Bank v. Field, 156 Mo. 1. c. 311; Blades v. Billings Mer. Co., 154 Mo. App. 350.] This is especially true in regard to real property, which, not being susceptible of destruction or removal, the necessity for a receiver therefor cannot be so urgent as in other cases. [Kelly v. Steele, 72 Pac. 887.]

II. A brief review of the testimony on the part of the plaintiffs introduced to sustain the allegation of their petition that the defendant has been guilty of such

**Deterioration.** neglect and failure to repair the property as to result in its deterioration during the pending of the suit is necessary to determine if that charge has been sustained. This testimony consisted of affidavits. The affiants were tenants of the property. Their testimony is as follows:

Palvogt stated that at and prior to the death of Caroline J. Peper, in August, 1920, the property needed repairs; that he made a request therefor prior to her death; that there was no material change for the worse in the condition of the property from the time of her death until the date of his affidavit.

Kohrman stated that he had occupied one of the buildings belonging to the defendant for over thirty-five years. That it is old, but in no worse condition than it was in August, 1920.

Marecek stated that he had occupied one of the buildings since February, 1920; that the roof was defective when he went into possession. His testimony does not show a material change in the condition of the building between the date of the death of Caroline J. Peper and the date of his affidavit.

McKernan testified the conditions of the building he occupied were about the same as they were before August, 1920.

Marshall stated that the repairs referred to by him were needed before Mrs. Peper's death.

This evidence does not sustain the charge. There was no proof of any neglect on the part of the defendant which might be held to cause deterioration of the property between the date of the death of Caroline J. Peper and the institution of this suit. Besides, it is held that deterioration in the value of property, such as is incident to age and the action of the elements or, as Horace puts it, the "gnawing tooth of time," is not a ground of itself for disturbing the possession of one holding under a record title adverse to the plaintiff. [Kelly v. Steele, 9 Idaho, 141, 72 Pac. 887.]

In addition, the record shows that when the defendant and her mother bought this property, when sold by the special commissioner under the order of the -court in the partition proceeding, which sale was approved by the court and a deed ordered to be made and was made by the commissioner to the purchasers, upon their payment of the amount of their bid, it became necessary for them to borrow money to meet this payment. This they did and in securing their obligations for this loan a mortgage trust company of St. Louis was named as trustee, to which they assigned and conveyed the leases, rental contracts and agreements of every kind concerning the buildings on said property and authorized the mortgage company to collect the rents and revenues of every kind and description from said buildings, whether then existing or accruing in the future. Out of the rents and revenues thus received · the mortgage company was required to pay the taxes on said property, the expenses of operating the same, the insurance premiums, established claims for damages, the keeping of the property in repair and the making of any alterations and additions thereto. This assignment was in force and effect at the date of the death of the mother, Caroline J. Peper, and at the time the affiants testified as to the condition of the property, and when the trial court appointed the receiver. Not only at the common law, but in this as well as other jurisdictions, the rule is well established that in the absence of a statute or an express stipulation in an agreement or lease, the lessor or owner is not bound to make repairs to leased property. This is especially true where the defects, as at bar, were due wholly to the efflux of time. [Rice v. White, 239 S. W. (Mo.) 141; Glenn v. Hill, 210 Mo. 291, 16 L. R. A. (N. S.) 699; 36 C. J. sec. 766; p. 125, n. 60.] But it is not necessary, under the express terms of the assignment by the defendant and her mother to the mortage company and the obligations of the latter to pay taxes and make repairs, to invoke this rule. This unequivocal agreement is a sufficient

answer to the plaintiffs' claim that the defendant was chargeable with neglect in not making the repairs.

III. The insolvency of the defendant is urged as a ground for the appointment of a receiver. The allegation of the petition in this regard is simply "that the said Estelle Peper Bushman is insolvent." This is simply a conclusion, and is insufficient as a statement of one of the essential conditions necessary to be pleaded and proved to authorize the court to appoint a receiver. By every principle of pleading, the facts and circumstances should have been stated from which the insolvency of the defendant shall be made to appear. In the absence of such allegations the court was not authorized to exercise the power here invoked.

*Insolvency.*

Insolvency, whether of a corporation or a natural person, means inability to pay debts as they become due in the ordinary course of business. [State v. Darrah, 152 Mo. 522; State v. Burlingame, 146 Mo. 214; Mitchell v. Bradstreet Co., 116 Mo. 226; 32 C. J. sec. 1, p. 805 and notes.] The rule of pleading, therefore, in regard to these two classes of persons is the same. In New Jersey where this question has received considerate attention, the courts hold, as we have indicated, that something more than a mere general averment of insolvency is necessary to authorize the introduction of proof in regard thereto and to secure the exercise of the court's power of appointment. [Atlantic Tr. Co. v. Storage Co., 49 N. J. Eq. 402; Newfoundland Railroad Con. Co. v. Schack, 40 N. J. Eq. 222; Rawnsley v. Trenton Life Ins. Co., 1 Stockton (N. J. Eq.) 95.]

Facts, however, are more forceful than rules of pleading. The latter have been established to prevent that uncertainty and confusion in the submission of issues that would otherwise arise, and to promote uniformity of rulings under a like state of facts. However, that the encompassing arm of equity may not be shortened by the invoking of rules let us see what the facts

are concerning the defendant's pecuniary condition. The approximate value of the property in question is $500,-000; the incumbrance on the same, not including taxes, is $185,000; this leaves an equity in the property of $315,000. Under the plaintiffs' contention as to the relative interests of the parties hereto, the defendant is entitled to one-third of this equity, or $105,000. This conclusion is not only an authorized deduction from the plaintiffs' affirmative averments, but its correctness is emphasized by the fact that the petition nowhere alleges any indebtedness of the defendant, other than that incurred in securing a loan to pay the purchase price of this property at the sale under the order of the court in the partition proceeding. A further admission of the plaintiffs inconsistent with the general averment of insolvency appears in the plaintiff Christian Peper Bushman's affidavit in support of the petition. Therein it is stated that the defendant "is insolvent, except in so far as any interest she may have in the property involved in this litigation." The effect of this admission is not only to modify but to nullify the general averment of the defendant's insolvency in that it disproves the same. This is true even if her pecuniary status be limited to her interest in the property in controversy as contended by the plaintiff. It is not so limited, however. The record discloses that defendant's mother, Caroline J. Peper, had, at the time of her death, shares in the Capital Stock of the Christian Peper Tobacco Co. of the value of $208,749. Under the plaintiffs' contention by which, in the utmost fairness, we are measuring the interests of the respective parties hereto in the consideration of this phase of the case, the defendant is entitled to a one-third interest in this amount. However, in determining the question of solvency in a case of this character the appellate court is not limited to the plaintiff's contention in the determination of the defendant's assets. In Ryder v. Bateman, 93 Fed. 28, it is sententiously said: "It is not to be held that every man is required to keep enough property, outside of that claimed adversely, to protect

him from being ousted by a receiver from that which he has.'' Defendant, in her answer to show cause, denies her insolvency. In support of this denial, among other things, she offered the inventory filed by the administrator *pendente lite* of the estate of her mother, Caroline J. Peper, which shows the value of that estate to be $223,235.79. It is not to be gainsaid that the defendant is not entitled to one-third of this amount. Without considering, therefore, her two-thirds interest in the property in controversy, which, under the ruling in the Ryder case, supra, might have been included in estimating the amount of her assets, we find them to be far in excess of her liabilities, and that she is solvent.

IV. The third essential condition necessary to be shown to authorize the appointment of a receiver is the Probable Recovery. probability, under the pleadings and proofs adduced, of the plaintiff's recovery upon the merits. Preliminary to a consideration of the proof offered by the plaintiffs to sustain that contention the material portions of the deed made by the special commissioner to Caroline J. Peper, and the defendant, under the order of the court in the partition proceeding, is inserted, that its effect upon the right of the plaintiff to recover on the merits may be considered. It is as follows:

"Whereas, said tracts and parcels herein particularly described and above referred to were offered and exposed for a long space of time, and the said Caroline J. Peper and Estelle Peper Bushman were the highest and best bidders for the same, they thereby became the purchasers thereof, and said several tracts and parcels of land were sold to them, subject to the approval of said court, at and for the several prices above set forth, aggregating as to all said tracts and parcels the sum of two hundred and forty-four thousand, five hundred and fifty dollars;

"Whereas, said Caroline J. Peper and Estelle Peper Bushman have elected to pay said purchase price in cash;

"Whereas, said Caroline J. Peper and Estelle Peper Bushman have declared to the special commissioner that their interests in and to said property and the purchase thereof are undivided, namely, an undivided one-third as to Caroline J. Peper and an undivided two-thirds as to Estelle Peper Bushman, and have requested that this deed be made to them in the proportions above named, to-wit, to Caroline J. Peper as to an undivided one-third and Estelle Peper Bushman as to an undivided two-thirds of the property herein described;

"Whereas, the report of said special commissioner as to said sale of May 22, 1917, was filed in said court on May 23, 1917, and remained on file until May 29, 1917, and no exceptions were made or filed to said report, or to the sale or sales reported therein;

"Whereas, by an order of said court duly made and entered in said cause on May 29, 1917, the said sales of all said tracts and parcels to Caroline J. Peper and Estelle Peper Bushman were approved in open court;

"Whereas, all of the foregoing acts and orders of said court fully appear from the records of the court in said cause;

"Now, Therefore Know All Men by These Presents, that I, the undersigned Charles Cummings Collins, as special commissioner aforesaid, for and in consideration of the premises, and of the following sums to me in hand paid by Caroline J. Peper and Estelle Peper Bushman, the receipt whereof is hereby acknowledged, to-wit; (1) the sum of ten thousand ($10,000) for the property herein described as being situated on the southeast corner of Sixth and Wash streets, (2) the sum of six thousand ($6,000) for the property herein described as being situated on the southwest corner of Sixth and Wash streets, (3) the sum of seven thousand five hundred dollars ($7,500) for the property herein described as being situated on Morgan Street, (4) the sum of six thousand and fifty ($6,050) dollars for the property herein described as being situated on Park Avenue, (5) the sum of two hundred and fifteen thousand ($215,000) dollars

for the property herein described as being situated in city block 206 north, or a total of all of said properties of two hundred and forty-four thousand, five hundred and fifty ($244,550) dollars, do hereby assign, transfer, convey and set over unto the said Caroline J. Peper and her heirs and assigns, as to an undivided one-third interest, and unto the said Estelle Peper Bushman and her heirs and assigns, as to an undivided two-thirds interest, the following-described real estate, situated, lying and being in the City of St. Louis, State of Missouri, to-wit:'' (Here follows the description of the property as described in plaintiffs' petition).

Caroline J. Peper was one of the parties defendant in the suit in partition under which the foregoing deed by the special commissioner was made. The question, therefore, of the validity of her deed to the defendant, dated January 14, 1911, and which transferred all of her interests in the property in controversy to defendant, except the house and lot on Washington Avenue, was determined in the partition suit and is therefore *res judicata*. This conclusion authorizes the presumption, in the absence of any allegation in the petition to the contrary, that the requirements of the statutes were complied with in the partition suit. These statutes are as follows:

"The petition shall particularly describe the premises sought to be divided or sold, and shall set forth the names, rights and title of all parties interested therein, so far as the same can be stated, including persons entitled to the reversion, remainder or inheritance and of every person who, upon any contingency, may be or become entitled to any beneficial interest in the premises." [Sec. 1997, R. S. 1919.]

"The court shall ascertain from the evidence, in case of default, or from the confession of the parties, if they appear, or from the verdict by which any issue of fact shall be determined, and shall declare the rights, titles and interests of the parties to such proceedings, petitioners as well as defendants, and determine such rights and give judgment that partition be made between such

of them as shall have any right therein accordingly."
[Sec. 2008, R. S. 1919.]

A comparative examination of these statutes with
the record in the partition suit, including the deed made
by the special commissioner to the appellant and her
mother, transforms the presumption as to the validity
of that proceeding into a fact.

The effect of a judgment in partition regularly ob-
tained has been fully discussed and determined by this
court in a number of cases.

In Forder v. Davis, 38 Mo. 107, in an action of eject-
ment the defendant pleaded as a defense a judgment in
a partition suit. The plaintiff contended that the title
to the lot in controversy was not adjudicated in that suit.
This court in passing on the question said:

"The judgment of partition establishes the title to
the land which is the subject of the partition, and, in an
action of ejectment upon an adverse possession, or an
adverse title existing at the date of the partition, it is
final and conclusive at law upon all the parties to the
record, and on all persons holding under them after-
wards. [Clapp v. Bromagham, 9 Cow. 569.] The statute
requires that the petition shall set forth the rights and
titles of all parties interested in the premises sought to
be divided, and of all persons having, upon any contin-
gency, a beneficial interest therein, present or expectant.
It requires the court to ascertain by evidence, by con-
fession, or by verdict, and to declare the rights, titles and
interests of the petitioners and defendants; and the final
judgment, that the partition be firm and effectual for-
ever, is made binding and conclusive on all the parties
to the proceedings, and their representatives, and on
all those claiming under them by right derived after the
commencement of the suit. This was the common-law
form of judgment in partition. [2 Greenl. Cruise's Dig.,
378.] It provides further, that if it shall appear that
there are parties claiming the same portion adversely
to each other, the court may decide upon such adverse
claims, or, in its discretion, direct such share to be al-

lotted subject to such claims; and there can be no doubt, that if any party defendant wholly denied the tenancy in common, and claimed the land adversely to the plaintiffs, he could so answer, and if that issue were found for him, it would entirely defeat the partition as against him. When the title or possession is held adversely, that matter must first be settled, either in the partition suit, when it can be done under the statute, or by an action of ejectment, before a partition can be had, either at law or in equity. . . . The plaintiff might have asserted his adverse title in the partition suit, or pleaded it in bar, and, if decided against him, he had his remedy by appeal or writ of error. The judgment must be taken as conclusive here, that no such defense was made, or that, if made, it was decided against him. Not having asserted his adverse claims there, they were wholly barred at law. In Spitts v. Wells, 18 Mo. 471, it was even held that an equitable claim for improvements, which might have been asserted in the partition suit, and was not, was barred beyond relief. It constituted a part of the subject of partition, and the rights and titles of the parties therein were to be ascertained and declared by the court. The whole right and title of the parties in that subject-matter were put in issue, and were necessarily decided upon as between them, and all holding under them afterwards.''

In Hart v. Steedman, 98 Mo. 456, cited with approval in Smith v. Kiene, 231 Mo. 235, and Becker v. Stroeher, 167 Mo. 321, it is said:

''The first position of the appellant seems to be that partition cannot be made a mode of acquiring title, that it does not determine title, and is simply a possessory action, leaving the title as it found it. Such seems to be the law in some jurisdictions, but it is not the law of this State. Our statute requires and calls for a trial of the titles of the parties. Persons who may, upon 'any contingency', have a beneficial interest must be made parties. The court must declare the titles and interests of the parties and give judgment accordingly.

Adverse claims to the same portion may be tried and determined. The report of the commissioners when confirmed by the judgment of the court 'shall be binding and conclusive upon all parties to the proceedings, and all other persons claiming under them.' The deed, where there is a sale, is a bar against all persons, parties to the suit, 'and against all other persons claiming from such parties, or either of them.'"

In Smith v. Kiene, 231 Mo. 215, this court decided that where defendants could have raised in a former suit all the questions presented as defenses in the ejectment suit, and those questions were there adjudicated by a court of competent jurisdiction, they are bound by the judgment therein, and quoting from the decision in the case of Yates v. Johnson, 87 Mo. 217, said: "It is enough to say that the court had jurisdiction . . . of the entire subject-matter. The judgment did determine the plaintiffs' rights, . . . and the order of sale was so framed as to give the purchaser a title. . . . No objections by answer, or otherwise, were made to that disposition of the mortgage. The mortgagee could have appealed or prosecuted a writ of error after final order of distribution, if not satisfied with the disposition of the cause. This has not been done. The judgment cannot be questioned in this collateral proceeding. [Rosenhein v. Hartsock, 90 Mo. 357; Martin v. McLean, 49 Mo. 361; McClellan v. Railroad, 103 Mo. 310; Holt County v. Cannon, 114 Mo. 514; Hope v. Blair, 105 Mo. 85.]

"If after the rendition of a judgment by a court of competent jurisdiction, and after the period has elapsed when it becomes irreversible for error, another court may in another suit inquire into irregularities or errors in such judgment, there would be no end to litigation and no fixed established rights."

In Pentz v. Kuester, 41 Mo. p. 450, it is said: "The proceedings in partition were binding and conclusive upon all the parties to the record, and upon all those holding under them afterwards; and the plaintiff was

estopped from denying that his title and right of possession had been extinguised by the transfer of both to the purchaser at the partition sale. [Owsley v. Smith, 14 Mo. 153; Forder v. Davis, 38 Mo. 115.] It was a sale by act of the parties themselves as well as by the judgment of the law, and not a sale *in invitum* like an ordinary sheriff's sale under execution. The partition was had upon the petition of this plaintiff; and the sheriff's deed in partition must stand upon the same footing here as if it had been a voluntary conveyance of the title by the plaintiff himself." ·

It is true in the cases above reviewed, as contended by the plaintiffs, that the actions assailing the validity of the judgments in partition were at law, but this is not the limit of the immunity of such judgments from collateral attack. Their conclusiveness is applicable alike to the decrees of courts of equity and to judgments of courts of law; and a judgment on the merits in a court of law will be conclusive upon the parties and their privies as to all matters litigated and determined between them in any subsequent proceedings in a court of equity. [Williams v. City of Hayti, 184 S. W. (Mo.) 470; Hutchinson v. Patterson, 226 Mo. 174; Donnell v. Wright, 147 Mo. 639; 34 C. J. sec. 1290, p. 882 and notes.]

V. Plaintiffs contend, however, although the finality of the judgment in partition be conceded, that the deed of the special commissioner is void and subject to cancellation· on account of fraud practiced in the procurement of same by the defendant upon the commissioner. What was probably meant by this contention was to assail the validity of the judgment in partition under which the deed was made, as having been procured by fraud. [Abington v. Townsend, 271 Mo. 602; Cackley v. Meyers, 199 S. W. (Mo. App.) 719.]

It remains to be determined, however, whether the allegations of the petition charging fraud, whether directed at the judgment or the deed, were sufficient to

entitle them to consideration by the trial court in the appointment of a receiver. While it is true, as was said in Abramsky v. Abramsky, 261 Mo. l. c. 125, that the only question involved in a proceeding of this character goes to the correctness in the appointment of a receiver, the propriety of the court's action is to be determined first from the petition asking the appointment. If it states no cause of action so far as concerns the charge of fraud, then upon this ground, there is no basis for the appointment. This is expressly declared in the Abramsky case and is but the declaration of an elementary rule in pleading.

We are first concerned, therefore, with the question as to whether the petition charges fraud. Its averments in regard thereto are as follows:

"Plaintiffs further state that on the 22nd day of May, 1917, said special commissioner sold all of the said property to the said Caroline J. Peper, said Caroline J. Peper having been the highest and best bidder at said sale; that the said Estelle Peper Bushman thereafter fraudulently represented to said special commissioner that she was interested in said property so purchased by the said Caroline J. Peper; that her interest in said property amounted to an undivided two-thirds; that after the said Caroline J. Peper had procured the purchase price of her bid on said property, and after paying the same to said commissioner, the said Estelle Peper Bushman, as aforesaid, fraudulently represented, or caused to be represented, to said commissioner that she was the owner and entitled to an undivided two-thirds interest in said property; that said commissioner, upon said representation, made and executed his deed as special commissioner in said partition suit above mentioned, purporting to convey and transfer said property to defendant Estelle Peper Bushman and her mother, the said Caroline J. Peper, and purporting to convey to the said Estelle Peper Bushman an undivided two-thirds interest in all of said property, and to the

said Caroline J. Peper an undivided one-third interest in all of said property," etc.

These allegations do not meet the measure of a charge of fraud. A petition which relies for relief upon this charge must state the facts constituting the fraud. Allegations that acts complained of were fraudulently done are not sufficient. As we said in Gittings v. Jeffords, 292 Mo. 678, a mere charge of fraud without a specification of the act or acts constituting the same is insufficient; or as stated in other cases "a general allegation of fraud is not sufficient; the facts constituting the fraud should be set out and detailed in the petition." [Stifel Brewing Co. v. Weber, 186 S. W. (Mo. App.) l. c. 1121; Nagel v. Lindell Ry. Co., 167 Mo. l. c. 96; Bank v. Rohrer, 138 Mo. l. c. 380; Goodson v. Goodson, 140 Mo. l. c. 218; Smith v. Sims, 77 Mo. 269.]

Further than this, if this petition had stated a cause of action based on fraud in the procurement of the deed in the partition proceedings there is no proof to sustain the charge. The record in that case shows a careful conformity with the requirements of the statutes (Secs. 1997 and 2008, R. S. 1919, supra) governing partition proceedings, from the institution of the suit to the final judgment approving the sale of the property. [Remmers v. Remmers, 239 S. W. (Mo.) 509.] Not only is there no proof but an absence of even an intimation as to the character of the defendant's conduct which simulated fraud. In the face of all of the facts, therefore, the charge is not entitled to serious consideration.

VI. In addition, the relationship of the plaintiff, Christian Peper Bushman, to his mother, through whom he claims a right of recovery in this action, must be taken into consideration in determining the reasonable probability of his prevailing upon a trial of the merits. Whatever interest he may have in the property cannot be greater than she could have asserted. "He stands in her shoes and sits in her seat." [Boughton v. Harder, 46 N. Y. App. Div. 352.] What-

Right of
Heir.

ever title he may be able to maintain must be based upon his right of inheritance from her whose deeds he is seeking to annul. Only upon the condition that the deeds could have been avoided by her can they be avoided by him; if binding upon her they are binding upon him. [Coulson v. Coulson, 180 Mo. 709.]

Barring fraud and mental incapacity she is bound by her deeds to the defendant and would not be heard to assail their regularity or question their validity. In addition she was a party to the record in the partition suit and, as stated, she is estopped from denying that her former title and right of possession was extinguished by the judgment, order of sale and conveyance of the property in that proceeding. The rigor of this rule is not abated when applied to the plaintiff, Christian Peper Bushman. [Lindell Real Est. Co. v. Lindell, 142 Mo. 83.]

VII. For further consideration is the allegation in the petition, asseverated in the plaintiffs' affidavit, that the deeds by Caroline J. Peper to the defendant are void in having been made when the grantor was mentally incompetent. Proof of the obtaining of a deed under such circumstances savors of fraud and thus classified is entitled on this ground to be reviewed, although the general allegations in regard thereto may, as we have held, be so defective as to not merit consideration. To an extent, the question of undue influence may also enter into the consideration of the obtaining of a deed from one mentally incompetent where it appears that a weaker person has been misled by the betrayal of confidence on the part of a stronger person upon whom the weaker relied or had a right to rely. [Hammell v. Hyatt, 59 N. J. Eq. 174.] The proof to sustain this charge must be of a nature to overcome the will of the grantor to the extent of preventing voluntary action or, as variously stated, to deprive the grantor of free agency or destroy her free will in executing the deed. [Jones v. Belshe, 238 Mo. 524; Howe v. Howe, 99 Mass. 88; Mallow v. Walker, 115 Iowa, 238; Howard v. Howard,

112 Va. 566.] Therefore, if the averment is made that a deed has been procured through an influence exercised over a person of weak mind, the transaction will merit the careful scrutiny of the appellate court. [Campbell v. Lima, 212 Mass. 11; Jefferson v. Rust, 149 Iowa, 594; Pritchard v. Hutton 187 Mich. 346.]

Where it is sought to set aside a deed on the ground of mental incapacity it must be shown that the will of the grantor was overcome. Proof of a weak mind in the grantor will not suffice to avoid a deed unless it is shown that there was such a want of capacity as to destroy the will, especially if it be shown that the grantor reposed confidence in the grantee and that the deed was executed without solicitation on the part of the latter, free and from any unfair influence exercised by the grantee. [Nixon v. Klise, 160 Iowa, 238; Nutting v. Pell, 11 App. Div. N. Y. 55.]

The undue influence must be shown to have been exercised up to and including the making of the deed and to have controlled it, and if due to the weak mind of the grantor such mental condition must be shown to have existed at the time of the transfer. [Masterson v. Sheahan, 186 S. W. (Mo.) 524; Smith v. Kopitzki, 254 Ill. 498; Myatt v. Myatt, 149 N. C. 137.] The mere fact that the grantor is old and that the deed is a voluntary one to a daughter with whom the former has lived for years on affectionate terms is not sufficient ground for cancelling a deed in the absence of proof of incapacity, fraud and undue influence. [LeGendre v. Goodridge, 46 N. J. Eq. 419; affirmed, 23 Atl. 581.] Nor will a deed otherwise valid be set aside because its execution may have been influenced by partiality or special affection for the grantee rather than the other children of the grantor. [McKissock v. Groom, 148 Mo. 459; Goodman v. Griffith, 238 Mo. 706.]

The Supreme Court of Alabama in an illuminating opinion distinguishes the difference between the relation which exists between parent and child and other confidential relations, so far as concerns the transfer of

property from the former to the latter, and holds that such gifts or grants should not be revoked because of the confidential relation of the parties or in the absence of any independent advice to the grantor, but only when actual undue influence is shown.   [Hassell v. Hassell, 201 Ala. 190, 77 So. 716.]

To sustain the allegations of mental incapacity affidavits of the plaintiff, Christian Peper Bushman, and three women are filed.  The sworn answer and separate affidavit of the defendant, Estelle Peper Bushman, denied, among other things, the mental incapacity of Caroline J. Peper.  A sworn answer of a defendant fully denying all the equities pleaded in a petition amounts, in practice, upon the hearing of an application for the appointment of a receiver, to a prima-facie case in favor of the defendant.  Upon the filing of such an answer the application will be refused, unless the plaintiff introduces in support of his petition such evidence as will overcome the denials of the answer.  The reason for this rule is stated by the courts to be that "the plaintiff having addressed himself to the conscience of the defendant has made her a witness, and her answer must be taken as true unless overcome by countervailing proof."   [Williamson v. Monroe, 3 Cal. 383; Rhodes v. Lee, 32 Ga. 470; Thompsen v. Diffenderfer, 1 Md. Ch. 489; McKaig v. James, 66 Md. 583; 34 Cyc. p. 133 and notes; Alderson on Receivers, sec. 134, p. 171 and notes; High on Receivers, sec. 34, p. 33, and notes.]   This rule has been recognized to the extent of holding that the appointment of a receiver after a full denial in an answer under oath, is a judicial error subject to reversal upon appeal. [Fairbairn v. Fisher, 5 Jones Eq. (N. C.) 390.]

In a case where an answer under oath was filed after the appointment of a receiver, the court, upon discharging the receiver, said: "I thought a case was made out by the bill, but the answer has overthrown it and the hand of the court must be removed."   [Drury v. Roberts, 2 Md. Ch. 157; Voshell v. Hynson, 26 Md. 83.]   Therefore, in the condition of this record, unless there is something

in the answer itself upon which can be based a strong presumption against the defendant's title—and we have found none—the appointment of the receiver was unauthorized. However, the trial court appears to have made this appointment without recognizing the rule as to the prevailing force of the defendant's answer.

Disregarding, therefore, for the nonce, the legal effect of defendant's unchallenged answer, an analysis of the proof offered by the plaintiffs in support of their application may in a more convincing way than by the application of a hard-and-fast rule, enable it to be determined whether upon such proof the receiver should have been appointed. As to the question of the mental capacity of Caroline J. Peper, plaintiff states that from and after the year 1909 down to the date of her death, she was of unsound mind and incapable of transacting any business. Other allegations as to the cause and character and duration of her ailment and that this condition prevailed at the time she made the deed to her daughter in January, 1911, may be regarded as included in the general statement first made. Notwithstanding this unqualified statement as to mental incapacity we find others in the affidavit which, measured by the rules of construction as to their effect and to human experience as to their evidential value, must be construed as lessening the force if not contradicting the unqualified general statement of mental incapacity. For example, plaintiff not only conceded but affirmatively states that at different periods during the time of her alleged mental incapacity, Caroline J. Peper acting alone, as plaintiff alleges, used money collected as rents to improve other property owned by her and her daughter; gave deeds of trust to secure money borrowed for the purpose of making improvements on the property; or to rebuild structures thereon destroyed by fire; and when money was received by her from insurance companies for losses sustained from fire and an excess remained in her hands after restoring or replacing the buildings destroyed, she used it to improve other property owned by her; that when

she was unable to pay the interest due on mortgages or deed of trust on the property she transacted the business necessary to secure loans to meet these debts; that when it became necessary to secure a loan to pay interest on amounts due by her or to pay insurance premiums or taxes she would execute assignments of rent to meet these payments. Further than this, the plaintiff states that she procured and paid the entire amount of the purchase price of the property bought at the special commissioner's sale in the partition proceeding, and a detailed statement is made by the plaintiff as to the amounts borrowed by her to meet this payment. To transact business of the character indicated, whether independently or in conjunction with her daughter, does not comport with the verity of either the general or the particular statements as to Caroline J. Peper's mental incapacity. Out of his own mouth, therefore, the truth of the plaintiff's statements as to his mother's mental incapacity may be measured. These, as we will presently show, consist of his naked, unsupported declarations. Those in regard to her business transactions, while exaggerated by him as to her pecuniary interest in the property, evidently with a view to minimizing the defendant's interest, are amply supported by court records and the testimony of Fred G. Zeibig, who collected the rents and made them payable to Caroline J. Peper and the defendant; and of Chas. C. Collins, the special commissioner, with whom she and her daughter had dealings in the purchase of the property at the sale in partition.

It is somewhat unusual that of the persons with whom Caroline J. Peper in one way or another found it necessary to deal in transacting the business connected with the property in controversy, none of them ever questioned her mental capacity. Had an affirmative conclusion in regard thereto been entertained by them it is reasonable to presume that they would not have dealt with her; or if in dealing with her any question had arisen in their minds as to her mental equipoise, even if it had not constituted incapacity, this fact would not

have escaped the industrious activity of those interested in securing such information. No such testimony has been offered. The presumption is, therefore, authorized that it does not exist.

The affidavit of a trained nurse, named Kleinschmidt, offered by plaintiff, has reference to the mental condition of Caroline J. Peper in August, 1920, eleven years after the execution of the deed to the defendant by her mother to the property in question, and four months after the latter transferred the Washington Avenue property to the defendant. Under the ruling of this court in Masterson v. Sheahan, supra, this testimony has no probative force in establishing mental unsoundness which would avoid these deeds.

In addition this affiant testifies to the determined will in actions, manner and speech of Caroline J. Peper, a fact not in harmony with a charge of mental incapacity.

Another affiant, also a trained nurse, named Taylor, knew Caroline J. Peper to within a year or two prior to her death; when she knew her she was not in a condition to transact any business. This affiant does not attempt to testify as to the condition of Mrs. Peper's mind in 1911 or in 1920 when the deeds sought to be annulled were made and her testimony has no material weight.

Another affiant, a woman named Meade, testified as to the condition of Mrs. Peper's mind in 1920 in that she was moody, wavering and mentally weak. The affiant's statements are general and are not confined to any particular time and under the rule announced in the Masterson case cannot be held to sustain the plaintiffs' contention that at the times stated she was incapable of legally executing the deeds in question.

The evidential force of the testimony of these affiants is destroyed by their remoteness or failure to show the mental condition of Caroline J. Peper at the times of the executions of the deeds in controversy. The plaintiffs' affidavit, therefore, stands alone. Inconsistent and contradictory in itself it is entitled to little credence; standing alone it is, under the rule stated, refuted

by the sworn answer and affidavit of the defendant. The allegation, therefore, as to the mental incapacity of Caroline J. Peper is not sustained.

We have discussed the merits of this case only so far as it has become necessary to determine whether there was a reasonable possibility of the plaintiff recovering on the merits. The record is to the contrary.

The receiver should not have been appointed. The action of the trial court authorizing the same is reversed with directions that it vacate its order in regard thereto. All concur.