LOUIS KIENKER ET AL. v. POWER TRUCK & TRACTOR COMPANY ET AL., Appellants.—19 S. W. (2d) 1060.

Division One, July 30, 1929.

*George C. Mackay* and *William G. Carpenter* for appellants.

*Harry E. Sprague* for respondents.

284

GANTT, J.—Action by certain stockholders of the Power Truck & Tractor Company against the company, the directors thereof, and P. G. and B. B. Craven, individually and as copartners doing business under the name of P. G. Craven & Co.

The suit was instituted July .8, 1923. A second amended petition was filed September 24, 1923, praying for an accounting by the directors of the property of the corporation; that they be removed as directors for misconduct, mismanagement and fraud; that they be compelled to account for money and property of the corporation illegally transferred to and withheld by them; that certain contracts between the corporation and the Cravens and their company, alleged to be illegal, be canceled; that the Cravens and their company be enjoined from selling or disposing of stock of. the corporation, and from altering or destroying the books and records thereof; that they be restrained from using or voting proxies held by them; that an order be made for a special meeting of the stockholders to elect others as directors to manage and control the corporation.; and that a receiver be appointed, and defendants ordered to show cause, etc.

The return is a general denial, with pleas of solvency, conspiracy to wreck the business, failure to apply to the directors for redress,

and that it was no longer necessary for the corporation to sell its treasury stock to conduct the business.

No action was taken to bring the cause to trial until January 25, 1926, when the parties appeared in person and by counsel. Plaintiffs then announced ready, and defendants stated they had no defense to offer and would consent to the appointment of a receiver if the "sting" was taken out of certain allegations in the petition. On request of the defendants, the matter was continued to two P. M., when the following stipulation, signed by the parties, was filed:

"There has heretofore been filed an original and a first and second amended petition, making divers and sundry charges against the Power Truck & Tractor Company and certain of its officers therein named, and it is stipulated that all charges in said amended petition may be considered withdrawn, except the charges 'that the officers and directors of said corporation have unsuccessfully managed its affairs, and that the said corporation has been running at a loss for the past twelve months and is now being run and operated at a loss,' and in consideration of this stipulation, the said Power Truck & Tractor Company, by and through its directors, and also the other defendants named, hereby consent that a receiver may be appointed upon the allegations, as stipulated in the petition."

Accordingly, a receiver was appointed who took charge of the property. On June 18, 1926, certain stockholders filed a petition seeking "to lift the receivership" by paying the expenses thereof and the debts of the corporation. Hearings were had from time to time on this petition with all parties present and participating. The petition was denied on August 30, 1926.

On October 2, 1926, defendants' attorneys having withdrawn, another attorney representing them filed a motion to revoke the order appointing the receiver and all orders with reference to the receivership, for the reason that all the jurisdictional allegations of the petition were eliminated by the stipulation. A motion to remove the receiver for misconduct was also filed. The motion to revoke the order appointing the receiver was submitted, and the motion to remove him was continued. On plaintiffs' motion the submission of defendants' motion to revoke the order appointing the receiver was set aside on November 15, 1926.

By moving to revoke the order appointing the receiver, the defendants repudiated the stipulation. In this situation, and on November 19, 1926, the court permitted the plaintiffs to amend the second amended petition by reincorporating all the jurisdictional allegations eliminated from the petition by the stipulation. Thereafter and on the same day the court, of its own motion, removed the receiver. This action in effect overruled defendants' motion to revoke the order appointing the receiver and to remove him for mis-

conduct. Thereafter and on the same day the court on the petition as last amended and on the evidence taken at the hearings on the petition of the defendants "to lift the receivership," reappointed the same person receiver. Thereupon the defendant corporation filed a motion to revoke this appointment, which was overruled. From this ruling the defendant corporation appealed.

I. The second amended petition covers sixty pages of the abstract and is challenged. The facts therein set forth and relied upon may be summarized as follows:

The Power Truck & Tractor Company was organized under the laws of Delaware with an authorized capital of $2,500,000, divided into 25,000 shares of the par value of $100. It was a nominal resident of that state for organization, but located in Detroit and engaged in the manufacture and sale of motor trucks. On January 5, 1920, there had been sold 420 shares of the stock, the remainder being in the treasury of the corporation. About this time L. R. Acton, the president of the corporation, came under the influence of P. G. Craven, a salesman of corporation stocks, who induced him to enter into a contract whereby he (the president) agreed to influence the directors of the corporation, to be presently elected, to give him (Craven) an exclusive right to sell 22,500 of its unissued stock, Craven to receive the excess over $80 and under $110 per share and half of the excess over $110 per share. In addition, for advice given and to be given by Craven to the president to influence the corporation to pay him (Craven) $25 for each of the first 20,000 trucks sold. The president did influence the directors to enter into such a contract with Craven; and on March 20, 1920, the corporation, acting under the same influences, engaged the services of B. B. Craven, a brother of P. G. Craven, to sell 10,000 shares of its unissued stock at $80 per share, he (B. B. Craven) to receive the excess over, and the purchasers of the stock to receive one per cent monthly cash dividends and half of the net earnings over one per cent per month and less than three per cent per month "if earned," and under the same influences the corporation declared a dividend of its outstanding stock of one and one-half per cent in April, 1922, and one per cent in August, 1922, and such dividends were paid out of the capital stock and not out of the earned profits or surplus of the corporation. In addition, the corporation agreed to pay B. B. Craven $10 per share on stock sold by him if the purchaser, in writing, promised to aid the corporation by furnishing names of persons likely to be in the market for trucks or tractors. Furthermore, B. B. Craven was appointed resident agent of the company in Missouri and Southern Illinois, and allowed $25,000 for agency and advertising purposes, and ten per cent commission on all trucks sold

by him or his agents in said territory. Under the same influences, the corporation purchased a tract of land in St. Louis, erected thereon a building and moved its plant to that city.

In the meantime and thereafter, the corporation, from time to time, delivered to P. G. and B. B. Craven, on credit, a large number of shares of stock, as a result of which about 6,000 shares are now outstanding, having been sold by the Cravens and scattered, in small blocks, among people of limited finances to be paid for on the installment plan, the Cravens taking, in many instances, the proxies of said people. Some of the stock was exchanged for stock in unsuccessful companies, which stock had been sold by the Cravens and with which the owners had become dissatisfied.

Shortly after the plant was moved to St. Louis, the Cravens began to interest themselves in the selling of trucks as well as stock. At that time the corporation had a sales organization which had control of that end of the business. As a result of the activities and influences of the Cravens, the sales organization was disorganized by the corporation canceling its contracts with its sales manager and other employees in consideration of large sums of money paid or to be paid by the corporation. Thereafter the Cravens took charge of the sales department. They conceived a plan for organizing "bonded hauling companies," and by investing some of the corporation's money actually organized such companies in St. Louis and Detroit and planned to do so in other cities. The hauling companies were to be of small capital, but do a large business in hauling for manufacturing and merchandising concerns, thereby making of the hauling companies customers for trucks. In fact, trucks were sold to these companies on credit and large sums were thereby lost.

Finally, the Cravens, by proxies gathered while selling stock, elected themselves and Clare Acton directors of the company, and, though owning only a few shares of stock, assumed open control and management of the corporation.

The business of the corporation was so conducted that the Cravens and a great number of purchasers of stock and trucks were indebted to the corporation in large sums of money, and the corporation was insolvent.

From the beginning a misleading method of bookkeeping was used which did not reflect the true financial condition of the corporation or the cost of conducting the business. By this method they were enabled to satisfy inquiring stockholders and retain permission to sell stock until July 24, 1923, when said permission was revoked.

Since the removal of the factory to St. Louis, the Cravens followed the practice of holding meetings of persons owning stock and of those to whom they sought to sell stock, which meetings were held with great frequency at the factory and other places in the city. The meetings

were used by the Cravens for the sole purpose of selling stock and collecting commissions. In other words, such was their domination of the affairs of the corporation that relief by appeal to them and the directors under their control was useless.

The influences and activities heretofore mentioned are, with other misconduct of the Cravens, set forth at length in the petition. This summary clearly indicates that the purpose of those in control was to sell stock rather than to manufacture and sell trucks.

Mismanagement, misconduct, fraud and insolvency are charged. A cause of action is stated in the petition.

II. Under its chancery jurisdiction and by legislative enactment (Sec. 1449, R. S. 1919) the court has the power to appoint receivers. [Abramsky v. Abramsky, 261 Mo. 117 l. c. 125, 168 S. W. 1178;  Commonwealth Finance Corporation v. Missouri Motor Bus Co., 233 S. W. l. c. 168; Bushman et ux. v. Bushman, 279 S. W. 122.]

In this instance did the court abuse its discretion?

On the hearing to "lift the receivership," the evidence given by P. G. Craven on cross-examination, among other things, tended to show that for several years he was the dominating figure in the management and control of the corporation; that he and his brother were indebted to the corporation in large sums of money; that the money collected for stock sold on the installment plan was kept by him unless all the installments were paid; that a large number of persons were indebted to the corporation for stock and trucks, and that very little effort was made to collect for the trucks; that "bonded hauling companies" owned the company large sums of money which were never collected; that dividends were paid out of the capital stock; that a misleading method of bookkeeping was in use which tended to deceive the stockholders and the Finance Department of the State; that the corporation was hopelessly insolvent, due to mismanagement, misconduct and fraud.

Clearly this evidence sustains the charges of the petition, and the court did not abuse its discretion. Furthermore, after the filing of the second amended petition, the defendants stated in open court they had no defense thereto.

Having reached this conclusion, the motion to dismiss the appeal will be overruled. The judgment should be affirmed. It is so ordered. All concur.